J-A24025-15

2015 PA Super 252

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA <br><br> Appellee <br><br> v. <br><br> CHARLES FREEMAN <br><br> Appellant | IN THE SUPERIOR COURT OF PENNSYLVANIA <br><br><br><br><br><br> No. 3607 EDA 2014 |

Appeal from the Judgment of Sentence of June 24, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-0004824-2013

BEFORE:  PANELLA, J., WECHT, J., and STRASSBURGER, J.[*]

OPINION BY WECHT, J.:                    **FILED DECEMBER 02, 2015**

Charles Freeman appeals the June 24, 2014 judgment of sentence. We affirm.

On May 5, 2013, Freeman, Andre Collier, Omar Miller, and Rasheed Teel devised a plan to rob nineteen-year-old Kareem Borowy.  Freeman drove the group to Borowy's house in Pottstown, Pennsylvania, and waited in the car while Miller, Teel, and Collier entered the residence.  Once inside, Collier, armed with a .45 caliber Glock pistol, demanded that Borowy hand over a large quantity of marijuana and $3,000.00 in cash.  Borowy pleaded with the robbers, insisting that there was no money in the home.

_____

[*]    Retired Senior Judge assigned to the Superior Court.

Sensing that the trio was growing impatient, Borowy falsely told them that he kept his money in a "stash house" at a different location. The men then took Borowy outside and forced him into the getaway car. Freeman drove away from the residence, presumably intending to travel to Borowy's contrived stash house. When the vehicle slowed down on a rural roadway in Lower Pottsgrove Township, Borowy managed to escape. Collier chased after Borowy and shot him twice. When he returned to the vehicle, Collier told the others that he saw Borowy fall to the ground, and instructed Freeman to drive away.

Although severely injured, Borowy managed to crawl on his hands and knees to the main roadway. A passing motorist spotted Borowy lying beside the road a short time later and called 911. When the police arrived, Borowy was unresponsive. He was pronounced dead at the scene.

In response to an anonymous tip, Montgomery County Detectives Todd Richard and Paul Bradbury interviewed Teel on May 9, 2013. Although he initially denied participating in the robbery and/or murder, he eventually admitted that he was present during the crimes. Teel told the detectives that Freeman drove him, Collier, and another male whose name he did not know from Philadelphia to Pottstown, where the group intended to rob Borowy. Teel identified Collier as the gunman and Freeman as the driver of the getaway car, which he described to the detectives as a light gray four-door vehicle.

On May 10, 2013, Detectives Mark Minzola and Joseph Campbell went to Freeman's residence, which he shared with his girlfriend, Janae Nixon. The detectives were dressed in formal business attire and carried firearms concealed beneath their suit jackets. Detective Minzola told Freeman that he was conducting a criminal investigation and wanted to speak with him. Freeman agreed to go to the Lower Pottsgrove Township Police Department, but told the detectives that he did not have a means of transportation. The detectives offered to drive Freeman to the police station, and he accepted that offer.

Detective Campbell drove Freeman and Detective Minzola to the police station in an unmarked police vehicle with no "cage or barrier" dividing the passenger compartment. *See* Notes of Testimony Suppression ("N.T.S."), 1/7/2014, at 28. The trip to the station lasted approximately ten to fifteen minutes. Once they arrived at the station, the detectives led Freeman into an interview room. Detective Minzola explained to Freeman that he had closed the interview-room door for privacy, but that it was unlocked. Detective Minzola also explained to Freeman that he was not under arrest, and that he was free to leave at any time.

Back at Freeman's residence, Detective Todd Richard arrived shortly after Freeman left with Detectives Minzola and Campbell. Detective Richard spoke with Nixon, and obtained her written consent to search the residence. Detective Richard asked Nixon if she knew where Freeman's cell phone was located. Nixon told Detective Richard that Freeman had multiple cell

phones, but that she saw one of them charging in the living room right before the detectives arrived. When Nixon could not find Freeman's phone where she last saw it, she called it. Once the call connected, Detective Richard could hear a loud ringing sound coming from a plastic garbage can in the kitchen. Detective Richard removed the lid from the garbage can, and found two cell phones therein. He removed the phones, which Nixon confirmed belonged to Freeman, and remained at the residence while his colleagues obtained a warrant to search the home and to seize Freeman's cell phones.[1]

Meanwhile, at the police station, Detective Minzola told Freeman that he was investigating a home invasion, kidnapping, and murder that occurred in Montgomery County on May 5, 2013. Detective Minzola then proceeded to ask Freeman a series of questions and transcribed Freeman's answers. Freeman categorically denied participating in the crimes. He told Detective Minzola that he was at a friend's house until 12:30 or 1:00 in the afternoon on the day of Borowy's murder. According to Freeman, he stopped to get gas on the way home, when he noticed that his car was overheating. Freeman then drove the vehicle, a silver Buick LeSabre, to his cousin's garage in Philadelphia to have it repaired. Freeman told Detective Minzola

---

[1] Three days later, on May 13, 2013, the police obtained a second search warrant, which authorized them to examine the content stored on Freeman's devices.

that he waited at his cousin's garage until Nixon picked him up. The two then went out for dinner.

After approximately fifty minutes of questioning, Detective Minzola printed the transcript of the interview and asked Freeman to review it. Freeman made two corrections to the transcript, agreed that it was otherwise accurate, and signed it. After reviewing Freeman's statement, Detective Minzola told Freeman that he suspected that Freeman was being dishonest. He then explained to Freeman the legal concept of accomplice liability. Freeman then became "loud and agitated" and denied any involvement in Borowy's murder. N.T.S. at 36. Freeman asked if he was free to leave, and Detective Minzola reminded him that he was. Rather than leaving, however, Freeman asked to speak with Detective Minzola's supervisor, Detective James McGowan.

Detective McGowan came into the interview room, introduced himself, and sat down. Detective McGowan told Freeman that the homicide investigation was going to continue, but that Freeman was free to leave. Detective McGowan gave Freeman his business card and cell phone number, and Freeman left the police station. Freeman returned approximately two hours later and asked for a ride home. Detective Minzola told Freeman that he could drive Freeman back to his residence in ten minutes. Freeman waited for a few minutes, but then apparently changed his mind and walked out of the police station.

On May 11, 2013, detectives found Freeman's silver Buick LeSabre parked on the 5500 block of Yocum Street in Philadelphia. When the detectives found the vehicle, all four doors were open and a man was cleaning the interior. The detectives towed the Buick to a secure holding area to prevent any potential evidence from being destroyed. On May 13, 2013, they applied for, and executed, a warrant to search the vehicle.

Detective Campbell arrested Freeman on May 20, 2013, and charged him with homicide, kidnapping, robbery, persons not to possess a firearm, receiving stolen property, false imprisonment, and conspiracy to commit each of those offenses.[2] On June 3, 2013, a team of federal, state, and local law enforcement officers arrested Miller on the sidewalk outside of his uncle's home in Philadelphia, Pennsylvania. The officers transported Miller to the homicide unit of the Montgomery County Detectives' Bureau. Miller initially denied participating either in the robbery or in the murder. However, after several hours of questioning by detectives, Miller confessed to participating in the robbery along with Freeman, Collier, and Teel.

Collier evaded arrest until August 5, 2013, when the Pennsylvania State Police and the United States Marshals arrested him in Carbon County, Pennsylvania. Teel pleaded guilty to third-degree murder, and agreed to testify for the Commonwealth against his co-conspirators. Prior to

---

[2]    18 Pa.C.S. §§ 2502, 2901(a)(3), 3701(a)(1)(i), 6105, 3925, 2903, and 903(b), respectively.

Freeman's trial, the Commonwealth filed notice of its intent to consolidate the cases against Collier, Miller, and Freeman. **See** Pa.R.Crim.P. 582 ("Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.").

On December 26, 2013, Freeman filed an omnibus pretrial motion. Therein, Freeman sought to suppress a litany of physical and testimonial evidence. Specifically, Freeman argued that: (1) the statements Freeman made to detectives on May 10, 2013, were obtained in violation of **Miranda v. Arizona**, 384 U.S. 436 (1966); (2) the May 10, 2013 warrant to search Freeman's residence was not supported by probable cause; (3) Detective Richard conducted an illegal search when he removed Freeman's cell phones from a kitchen garbage can without a warrant; (4) the May 13, 2013 warrant to search the content stored on Freeman's cell phones was not supported by probable cause; and (5) detectives illegally seized Freeman's Buick LeSabre on May 11, 2013. On April 15, 2014, following a hearing, the trial court denied Freeman's suppression motions.

In his December 26, 2013 motion, Freeman also sought severance of his case from the prosecution of his co-defendants. Freeman argued that a joint trial would unfairly prejudice him because "[t]he various statements of [Freeman's] co-defendants are not capable of separation by the jury, and there is a danger of confusion." **See** Freeman's Motion for Severance,

12/26/2013, at 5. On March 14, 2014, following a hearing, the trial court denied Freeman's motion to sever.

Freeman, Collier, and Miller proceeded to a jury trial, which commenced on April 15, 2014. On April 16, 2014, Teel testified for the Commonwealth. He explained that he and his co-conspirators concocted a plan to rob Borowy, and that Collier shot Borowy after he escaped from Freeman's vehicle in Lower Pottsgrove Township. On April 18, 2014, Detective Todd Richard of the Montgomery County Detectives' Bureau read to the jury Miller's confession, which, pursuant to **Bruton v. United States**, 391 U.S. 123 (1968),[3] the Commonwealth redacted to eliminate all references to Collier and Freeman.[4] The trial court then instructed the jury to consider Miller's confession as evidence against Miller only, and not as evidence against Collier or Freeman.

_____

[3] In **Bruton**, the United States Supreme Court held that a non-testifying co-defendant's confession implicating another defendant in the charged offense is inadmissible against the defendant because it violates his Sixth Amendment right to confront and to cross-examine witnesses testifying against him. 391 U.S. at 137.

[4] Prior to trial, both Collier and the Commonwealth submitted to the trial court proposed redactions to Miller's statement. Although both versions were very similar, Collier took issue with a reference to Freeman's paramour (on page four of Miller's statement) and a reference to Teel as "Andre's cousin" (on the tenth page of Miller's statement). In response, the Commonwealth deleted both of those answers and the questions that preceded them. Freeman did not suggest his own redactions, but he did endorse Collier's proposal.

On April 21, 2014, following a five-day jury trial, Freeman was convicted of second-degree murder, robbery, kidnapping, conspiracy to commit kidnapping, and conspiracy to commit robbery. On June 24, 2014, the trial court sentenced Freeman to life imprisonment.

On December 17, 2014, Freeman timely filed a notice of appeal. On January 7, 2015, the trial court ordered Freeman to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Freeman timely complied. On January 28, 2015, the trial court filed a Pa.R.A.P. 1925(a) opinion.

Freeman presents twelve issues[5] for our consideration:

1. Whether the trial court erred in not suppressing the written statement of [Freeman] taken on May 10, 201[3], at the Lower Pottsgrove Police Department for failure to give **Miranda** warnings.

_____

[5]   A brief that discusses in depth only a few issues is almost always more persuasive than one that addresses a dozen issues, but spends only a few paragraphs on each. "[W]e have said many times that urging a multitude of errors on appeal is generally seen as bad appellate strategy because the weaker or non-meritorious issues tend to detract from the more meaningful issues which may support a finding of reversible error." **Carpinet v. Mitchell**, 853 A.2d 366, 369 (Pa. Super. 2004). We remind Freeman's counsel that "[a]ppellate advocacy is measured by effectiveness, not loquaciousness." **Kenis v. Perini Corp.**, 682 A.2d 845, 847 (Pa. Super. 1996) (quoting Ruggero J. Aldisert, _The Appellate Bar: Professional Competence and Professional Responsibility—A View from the Jaundiced Eye of One Appellate Judge_, 11 Cap. U. L. Rev. 445, 458 (1982)); **see also Fifth Third Mortgage Co. v. Chicago Title Ins. Co.**, 692 F.3d 507, 509 (6th Cir. 2012) ("When a party comes to us with nine grounds for reversing the district court, that usually means there are none.").

2. Whether the trial court erred in not suppressing the fruits of the search of [Freeman's] home where the police removed [Freeman] from the house in order to gain consent from his girlfriend.

3. Whether the [trial] court erred in allowing the admission of the cellular telephones found in [Freeman's] trash can.

4. Whether the warrant to search [Freeman's] phones lacked probable cause.

5. Whether [Freeman's] car was unlawfully seized without a warrant.

6. Whether the [trial] court erred in not severing [Freeman's] trial from the co-defendants.

7. Whether the [trial] court erred in allowing the statement of co-defendant Miller into evidence.

8. Whether the statement of co-defendant Miller was properly redacted.

9. Whether the [trial] court erred in denying [Freeman's] motion to exclude cell phone testimony.

10. Whether the evidence at trial was insufficient to sustain a conviction of the crimes charged.

11. Whether the verdict of the jury was against the weight of the evidence.

12. Whether there was unlawful jury tampering by the prosecution.

Brief for Freeman at 3-4.

In his first five issues, Freeman maintains that the trial court erred in denying his pre-trial motion to suppress evidence. The following standard of review applies to these challenges:

> Our standard of review of an order denying a motion to suppress evidence is limited to determining whether the findings of fact are supported by the record and whether the legal conclusions drawn from those facts are in error. ***Commonwealth v.***

> *Crompton*, 682 A.2d 286 (Pa. 1996); *Commonwealth v. Chambers*, 598 A.2d 539 (Pa. 1991). In making this determination, this [C]ourt may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted. *Id.* If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous. *Id.*

*Commonwealth v. Jones*, 758 A.2d 228, 229 (Pa. Super. 2000) (citations modified).

We begin with Freeman's contention that the trial court should have suppressed the statements that he made to detectives on May 10, 2013, because the police failed to advise him of his *Miranda* rights. Freeman's argument is without merit.

It is a fundamental precept of constitutional law that a suspect subject to a custodial interrogation by police must be warned that he has the right to remain silent, that anything he says may be used against him in court, and that he is entitled to the presence of an attorney. *Miranda*, 384 U.S. at 469. If an individual is not advised of those rights prior to a custodial interrogation, any evidence obtained through the interrogation is inadmissible at trial. *In re K.Q.M.*, 873 A.2d 752, 755 (Pa. Super. 2005). The *Miranda* safeguards are triggered "whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 292 (1980). Instantly, we focus our discussion upon whether Freeman was "in custody" for *Miranda* purposes at the time of his statement, because there is no doubt that Detective Minzola's

- 11 -

questioning constituted an interrogation. *Innis*, 446 U.S. at 292 (defining interrogation to include express questioning and its functional equivalent).

We have explained that an individual is in custody for *Miranda* purposes when he "is physically denied . . . his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *K.Q.M.*, 873 A.2d. at 755 (citing *Commonwealth v. Williams*, 650 A.2d 420, 427 (Pa. Super. 1994)). "[T]he police officer's subjective intent does not govern the [custody] determination," instead we look to "the reasonable belief of the individual being interrogated." *Commonwealth v. Zogby*, 689 A.2d 280, 282 (Pa. Super. 1997). In order to ascertain the defendant's reasonable belief, the reviewing court must consider the totality of circumstances, including factors such as "the basis for the detention; the duration; the location; whether the suspect was transferred against his will, how far, and why; whether restraints were used; the show, threat, or use of force; and the methods of investigation used to confirm or dispel suspicions." *Commonwealth v. Busch*, 713 A.2d 97, 101 (Pa. Super. 1998).

Here, the record amply supports the trial court's finding that Freeman was not in custody for *Miranda* purposes. Freeman voluntarily accompanied the detectives to the Lower Pottsgrove Township Police Station. The detectives did not show, use, or threaten to use force. They did not transfer Freeman against his will. They did not restrain Freeman. They were

- 12 -

dressed in formal business attire, drove an unmarked sedan, and had their firearms concealed.  Finally, they reminded Freeman multiple times that he was not under arrest and that he was free to leave at any time.  In light of these factors, Freeman's first issue lacks merit.

In his second issue, Freeman argues that trial court should have suppressed the cell phones that Detective Richard found at the bottom of a garbage can in Freeman's home, because "[t]he police used trickery to obtain third-party consent."  Brief for Freeman at 12 (citing **Commonwealth v. Slaton**, 608 A.2d 5 (Pa. 1992)).  Relatedly, in his third issue, Freeman argues that, even "if the consent is deemed valid, the search of the trash can exceeded the scope of [Nixon's] consent." **Id.**  Freeman has waived both of these claims because he failed to raise them before the trial court.

"[A]ppellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal." **Commonwealth v. Little**, 903 A.2d 1269, 1272-73 (Pa. Super. 2006); **Commonwealth v. Thur**, 906 A.2d 552, 566 (Pa. Super. 2006) ("When a defendant raises a suppression claim to the trial court and supports that claim with a particular argument or arguments, the defendant cannot then raise for the first time on appeal different arguments supporting suppression.").

It is well-settled law that motions to suppress evidence are decided prior to the beginning of trial. Moreover, pre-trial rulings on the suppression of evidence are final. In sum, suppression motions must ordinarily be made before the trial to the suppression court, they must be made with specificity and particularity as to the evidence sought to be suppressed and the reasons for the suppression, and the suppression court's determination is to be final, except in the case of evidence not earlier available.

*Commonwealth v. Metzer*, 634 A.2d 228, 233 (Pa. Super. 1993) (citations omitted).

Although the burden in suppression matters is on the Commonwealth to establish "that the challenged evidence was not obtained in violation of the defendant's rights," Pa.R.Crim.P. 581(D), that burden is triggered only when the defendant "state[s] specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." *Commonwealth v. McDonald*, 881 A.2d 858, 860 (Pa. Super. 2005). Thus, when a defendant's motion to suppress does not assert specifically the grounds for suppression, he or she cannot later complain that the Commonwealth failed to address a particular theory never expressed in that motion. *McDonald*, 881 A.2d at 860; *Commonwealth v. Quaid*, 871 A.2d 246, 249 (Pa. Super. 2005) ("[W]hen a motion to suppress is not specific in asserting the evidence believed to have been unlawfully obtained and/or the basis for the unlawfulness, the defendant cannot complain if the Commonwealth fails to address the legality of the evidence the defendant wishes to contest.").

Nowhere in his motion to suppress did Freeman aver that Nixon's consent was invalid, nor did he allege that Detective Richard's search exceeded the scope of that consent. Moreover, when the trial court asked Freeman to state his basis for requesting suppression on the record at the commencement of the suppression hearing, Freeman did not raise such an argument. *See* N.T.S., 1/7/2014, at 16-17 (arguing that the search warrants the police obtained were unsupported by probable cause). His failure to advance these particular legal theories in the first instance before the trial court renders his claims waived.

Next, Freeman argues that the trial court erred in denying his motion to suppress the data stored on his cell phones because the search warrant obtained by detectives was not supported by probable cause. Brief for Freeman at 13. The gist of Freeman's argument is that the search warrant lacked probable cause because it relied entirely upon Teel's confession to detectives, wherein he identified Freeman as a co-conspirator in the robbery, kidnapping, and murder. *Id.* ("[T]he affidavit of probable cause . . . was based solely on the uncorroborated statements of co-defendant Teel. Because of this, the affidavit lacked probable cause and the information obtained from the phones should have been suppressed."). We disagree.

The trial court did not err in holding that the issuing magistrate had a substantial basis for concluding that probable cause existed. *See Commonwealth v. Baker*, 615 A.2d 23, 25 (Pa. 1992) ("[T]he duty of the reviewing court is simply to ensure that the magistrate had a substantial

basis for . . . concluding that probable cause existed."). With regard to the somewhat elusive concept of probable cause, we have explained as follows:

> "[P]robable cause does not involve certainties, but rather 'the factual and practical considerations of everyday life on which reasonable and prudent men act.'" *Commonwealth v. Wright*, 867 A.2d 1265, 1268 (Pa. Super. 2005) (quoting *Commonwealth v. Romero*, 673 A.2d 374, 376 (Pa. Super. 1996)). "It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause." *Commonwealth v. Monaghan*, 441 A.2d 1318 (Pa. Super. 1982) (citation omitted); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983) (holding that probable cause means "a fair probability that contraband or evidence of a crime will be found."); *Commonwealth v. Lindblom*, 854 A.2d 604, 607 (Pa. Super. 2004) (reciting that probable cause exists when criminality is one reasonable inference, not necessarily even the most likely inference). To this point on the *quanta* of evidence necessary to establish probable cause, the United States Supreme Court recently noted that "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable cause decision." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citations omitted).

*Commonwealth v. Dommel*, 885 A.2d 998, 1002 (Pa. Super. 2005) (citations modified).

Instantly, in his affidavit of probable cause, Detective Paul Bradbury set forth Teel's narrative of the crimes. According to Teel, Freeman drove him, along with Miller and Collier, to rob Borowy. Freeman waited in the car a short distance away while his cohorts entered Borowy's home and stole approximately $1,000. When Freeman's co-defendants were ready to leave the home, one of them called Freeman's cell phone, and Freeman picked them up immediately thereafter.

In the affidavit, Detective Bradbury also averred that Detective Richard went to Freeman's home, and found two of Freeman's cell phones in a kitchen garbage can. Nixon told Detective Richard that she and Freeman were looking out the window when the detectives pulled up in front of the residence. She stated that Freeman might have discarded his phones at that time. Finally, Freeman falsely told Detectives Minzola and Campbell that he owned only a single cell phone. Although he gave the detectives three possible locations within his home where he said that he might have his phone, Freeman did not mention the kitchen garbage can.

The facts contained within Detective Bradbury's affidavit of probable cause provided the issuing magistrate with a substantial basis to conclude that there was a fair probability that evidence of criminal activity would be found on Freeman's cell phones. Therefore, Freeman's fourth issue is without merit.

In his fifth issue, Freeman contends that the police illegally seized his Buick LeSabre. Here, Freeman argues that, when detectives discovered his vehicle outside of a garage in Philadelphia, they "could have secured the vehicle at that location, posted an officer there, and obtained a warrant." Brief for Freeman at 14. Instead, the detectives towed the Buick to a secure holding facility and applied for a search warrant. Freeman maintains that this constituted an illegal seizure because no exigent circumstances were present. We disagree.

Freeman misunderstands the law applicable to his suppression claim. The Pennsylvania Supreme Court recently clarified that "[t]he prerequisite for a warrantless search [or seizure] of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required." *Commonwealth v. Gary*, 91 A.3d 102, 138 (Pa. 2014). In abolishing the exigency prerequisite in the context of the automobile exception, the Supreme Court specifically discussed the impracticability of such a requirement in circumstances similar to those *sub judice*.

> [T]he question of whether, and under what circumstances, a police officer is required to guard a vehicle stopped in a public place while waiting for another officer to secure a search warrant are far from clear. A related issue is whether police must present evidence as to the probability that one or more third parties—who may very well be completely unknown to the officers—might move a vehicle or tamper with the evidence therein while a warrant is being sought. These are fact-intensive issues, far from amenable to articulable rules or some other form of judicial guidance that law enforcement officers operating in the field could readily apply.
>
> [O]ur fractured jurisprudence in the area of warrantless motor vehicle searches has often turned on small details in the midst of a complex factual scenario, details which have been given varying emphasis over time by different members of this Court. Accordingly, it remains difficult, if not impossible, for police officers in the field to determine how this Court would rule in motor vehicle search and seizure cases, the circumstances of which are almost endlessly variable. To provide greater uniformity in the assessment of individual cases and more consistency with regard to the admissibility of the fruits of vehicular searches based on probable cause, a more easily applied rule—such as that of the federal automobile exception—is called for. *See California v. Acevedo*, 500 U.S. 565, 577 (1991).

*Id.* at 136-37.

Freeman does not dispute that probable cause existed (*i.e.,* that there was a fair probability that contraband or evidence of a crime would be found in the Buick). Nothing more was required to justify the seizure. Freeman's only argument on this issue is that no exigent circumstances were present. However, "no exigency beyond the inherent mobility of a motor vehicle is required." **Gary**, 91 A.3d at 138.[6] Thus, his claim necessarily fails.

In his sixth, seventh, and eighth issues, Freeman argues that the trial court erred in denying his motion to sever his trial from that of his co-defendants. According to Freeman, the introduction of Miller's confession at trial violated his rights under the Confrontation Clause.[7] Brief for Freeman at 16 (citing **Bruton**, *supra*). We disagree.

The decision whether to grant a motion for severance is within the sound discretion of the trial court and "should not be disturbed absent a manifest abuse of discretion." **Commonwealth v. Chester**, 587 A.2d 1367, 1372 (Pa. 1991).

In **Bruton**, the United States Supreme Court held that a non-testifying co-defendant's confession, which implicates another defendant in the

---

[6] Although, the fact that an unknown male was cleaning the interior of Freeman's vehicle when the detectives found it strongly supports a finding of exigent circumstances.

[7] "In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." U.S. Const. amend. VI.

charged offense, is inadmissible against the defendant because it violates his Sixth Amendment right to confront and to cross-examine any witnesses testifying against him. However, the Supreme Court subsequently held that the Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession where the statement is redacted to eliminate any reference to the defendant and is accompanied by a limiting instruction. *See Richardson v. Marsh*, 481 U.S. 200 (1987). In *Commonwealth v. Cannon*, 22 A.3d 210 (Pa. 2011), our own Supreme Court explained as follows:

> The Confrontation Clause guarantees a criminal defendant the right to cross-examine witnesses. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). Ordinarily, a witness whose testimony is introduced at a joint trial is not considered a witness "against" a defendant if the jury is instructed to consider the testimony only against a co-defendant. This principle is in accord with the well-established presumption that jurors will abide by their instructions. In *Bruton,* however, the United States Supreme Court recognized that "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton,* 391 U.S. at 135. Accordingly, "[t]he *Bruton* Court held that, if a non-testifying co-defendant's confession directly and powerfully implicates the defendant in the crime, then an instruction to the jury to consider the evidence only against the co-defendant is insufficient, essentially as a matter of law, to protect the defendant's confrontation rights." *Commonwealth v. Brown*, 925 A.2d 147, 157 (Pa. 2007) (citing *Bruton*, 391 U.S. at 135-36).
>
> The United States Supreme Court examined the *per se* *Bruton* rule in *Richardson*, *supra*, and emphasized its narrow scope. Therein, the Court held that the "Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction when . . . the

confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." ***Richardson***, 481 U.S. at 211. Consistent with the High Court's pronouncement and our own line of cases, we have held that substituting the neutral phrase "the guy" or "the other guy" for the defendant's name is an appropriate redaction. ***See Commonwealth v. Travers***, 768 A.2d 845, 851 (Pa. 2001).

***Cannon***, 22 A.3d at 217-18 (some citations omitted).

Instantly, the Commonwealth redacted Miller's statement and substituted all references to Collier and Freeman with the neutral phrases "the first guy" and "the second guy." The trial court then instructed the jury to consider Miller's confession as evidence against Miller only, and not as evidence against Collier or Freeman. Freeman acknowledges that Pennsylvania courts consistently have held that such a method of redaction satisfies the dictates of ***Bruton***. ***See Travers***, 768 A.2d at 851; ***Commonwealth v. McGlone***, 716 A.2d 1280, 1286 (Pa. Super. 1998) (holding that use of the phrase "the other man" not only eliminates the name of the defendant, *i.e.*, the ***Bruton*** proscription, it also eliminates a suggestion of alteration).

Nevertheless, Freeman argues that "the number of times that ['the second guy'] was used in this case was unconscionable." Brief for Freeman at 19. He maintains that, because the phrase "the second guy" was used over twenty times throughout Miler's statement, "the jury saw right through this redaction and assumed that Miller was speaking about Collier and Freeman." ***Id.*** Freeman does not cite any legal authority to support his contention that a defendant's confrontation rights are violated where a

substituted neutral term appears too frequently in a redacted statement, and we are aware of none. To the contrary, the United States Supreme Court has declined to extend its holding in **Bruton** to a co-defendant's confession that was redacted to omit any reference to the defendant, but could be linked to the defendant by inference or implication. **See Richardson**, 481 U.S. at 211.

In light of the governing principles in this area, as most recently elucidated in **Cannon**, the redaction here, combined with the trial court's cautionary instruction, sufficed to protect Freeman's Sixth Amendment right to confrontation. Because the redacted statement facially was not incriminating, the trial court did not err in denying Freeman's motion to sever.

In his ninth issue, Freeman argues that "the [trial] court erred in denying [his] motion to exclude cell phone testimony." Brief for Freeman at 19. Specifically, Freeman argues that the trial court should have held a **Frye**[8] hearing to determine whether the methodology used by the Commonwealth's cellular telephone network expert is generally accepted in the scientific community. We disagree.

"[T]he admission of expert scientific testimony is an evidentiary matter for the trial court's discretion and should not be disturbed on appeal unless

---

[8] **Frye v. United States**, 293 F. 1013 (D.C. Cir. 1923).

the trial court abuses its discretion." ***Grady v. Frito-Lay, Inc.***, 839 A.2d 1038, 1046 (Pa. 2003). "[T]he proponent of expert scientific evidence bears the burden of establishing all of the elements for its admission under Pa.R.E. 702, which includes showing that the ***Frye*** rule is satisfied." ***Id.*** at 1045.

> In determining whether novel scientific evidence is admissible in criminal trials, Pennsylvania courts apply the test set forth in ***Frye***. ***See Commonwealth v. Topa***, 369 A.2d 1277, 1281 (Pa. 1977) (adopting the ***Frye*** test). Pursuant to ***Frye***, to be admissible, such evidence must have gained general acceptance in the relevant scientific community. This Court has generally required that both the theory and technique underlying novel scientific evidence must be generally accepted.

***Commonwealth v. Blasioli***, 713 A.2d 1117, 1119 (Pa. 1998) (some citations omitted; footnote omitted).

"[A] ***Frye*** hearing is warranted when a trial judge has articulable grounds to believe that an expert witness has not applied accepted scientific methodology in a conventional fashion in reaching his or her conclusions." ***Betz v. Pneumo Abex, LLC***, 44 A.3d 27, 53 (Pa. 2012). Instantly, Freeman filed a motion *in limine*, which provided as follows:

1. The Commonwealth intends to introduce evidence from [Freeman's] cell phone records to prove his whereabouts at the time of the home invasion and murder.

2. The proponent of said testimony must explain the manner in which cell phone signals are received by cell phone towers in a given geographic area.

3. Said testimony will require an expert's scientific, technical or other specialized knowledge that is beyond that possessed by the average layperson.

4. Said testimony should be excluded under Pennsylvania Rule of Evidence 702, which requires that the "expert's methodology is generally accepted in the relevant field." Pa.R.E. 702(c); *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

5. The Commonwealth has not provided an expert report regarding the testimony to be offered in regard to [Freeman's] cell phone usage.

6. [Freeman] requests that the court direct the Commonwealth to furnish such an expert report in accordance with Pennsylvania Rule of Criminal Procedure 573(B)(2)(b).

WHEREFORE, [Freeman] moves for the exclusion of any cell phone testimony.

Freeman's Motion to Exclude Cell Phone Testimony, 1/10/2014, at 1 (unnumbered).

Because the Commonwealth had not yet provided Freeman with an expert report when he filed his motion *in limine*, he did not, and could not, allege specifically how the Commonwealth's expert testimony failed to meet the *Frye* standard. The trial court, in order to give Freeman an opportunity to amend his motion, did not rule on it until after the Commonwealth served him with a copy of its expert's report. Trial Court Opinion, 1/28/2015, at 21. Freeman did not file an amended motion. On April 15, 2014, the day that Freeman's trial commenced, the court entered an order denying his motion without prejudice to any further objections Freeman might have raised at trial.

The trial court, in its April 15, 2014 order, agreed with Freeman that the Commonwealth's cell phone location evidence "required the testimony of

a witness qualified as an expert in the relevant field." *Id.* at 22. However, the trial court held that Freeman failed to plead any facts in support of his proposed remedy (*i.e.*, exclusion of the Commonwealth's "cell phone testimony"). Accordingly, the trial court held that Freeman "retained the right to object to the evidence at issue on grounds other than the conclusory assertion that the expert's methodology was not generally accepted in the [scientific community]." *Id.*

Before this Court, Freeman now argues that "he was deprived of his right to a *Frye* hearing[.]" Brief for Freeman at 21. This argument is unavailing for two reasons. First, Freeman did not request a *Frye* hearing. In his motion *in limine*, Freeman sought to exclude the Commonwealth's cell phone location evidence; he never averred that a hearing was necessary to develop his claim. Second, Freeman's conclusory motion did not merit a *Frye* hearing. As explained *supra*, "a *Frye* hearing is warranted when a trial judge has **articulable grounds** to believe that an expert witness has not applied accepted scientific methodology in a conventional fashion in reaching his or her conclusions." *Betz*, 44 A.3d at 53 (emphasis added). Freeman's motion did not include **any** facts to suggest that the Commonwealth's expert failed to apply the accepted scientific methodology in reaching his conclusions. Indeed, because Freeman filed his motion before the Commonwealth had provided him with an expert report, he necessarily could not have made such a showing. The trial court did not abuse its discretion

by not holding a *Frye* hearing, which the circumstances did not warrant and Freeman did not request.[9]

In his tenth issue, Freeman contends that "the evidence at trial was insufficient to sustain a conviction of the crimes charged." Brief for Freeman at 21.[10] Freeman has waived this issue.

The Pennsylvania Supreme Court has explained that Rule 1925 is a crucial component of the appellate process, which "is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal." ***Commonwealth v. Lord***, 719 A.2d 306, 308 (Pa. 1998). "When an appellant fails adequately to identify in a concise manner

---

[9]   In his brief, Freeman notes that his co-defendant, Collier, also filed a motion to exclude the Commonwealth's expert testimony "regarding cell site coverage." Brief for Freeman at 21. Freeman contends that the trial court, in response to Collier's motion, held that "the proposed testimony [was] not admissible by reason of failing to satisfy the standard established by *Frye*." ***Id.*** Freeman misrepresents the trial court's order, which he purports to quote directly. The court actually held that "the proposed testimony [was] **not inadmissible** by reason of failing to satisfy the standard established by *Frye*." Order, 4/15/2014, at 1 (emphasis added).

[10]   When examining a challenge to the sufficiency of evidence:

> Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. . . . When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000) (citations omitted).

the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues." *In re Estate of Daubert*, 757 A.2d 962, 963 (Pa. Super. 2000). "In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all." *Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa. Super. 2001).

"In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) (citing *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009)). "Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Gibbs*, 981 A.2d at 281.

In his Rule 1925(b) statement, Freeman argued only that "[t]he evidence at trial was insufficient to sustain a conviction of the crimes charged." Freeman's Concise Statement, 1/28/2015, at 1 (unnumbered). Freeman's 1925(b) statement does not specify which element or elements of the relevant crimes, or even which crimes, the Commonwealth failed to

prove beyond a reasonable doubt.[11]  This assertion is far too vague to warrant meaningful appellate review.  **See Garland**, *supra*.  Thus, Freeman has waived his challenge to the sufficiency of the evidence.

Freeman also has waived his eleventh issue, wherein he challenges the weight of the evidence.  Here too, Freeman failed to specify in his Rule 1925(b) statement which verdict or verdicts were contrary to the weight of the evidence, and he neglected to offer specific reasons as to why those verdicts were contrary to the weight of the evidence.  Instead, Freeman asserted only that "[t]he verdict of the jury was against the weight of the evidence."  Freeman's Concise Statement, 1/28/2015, at 1 (unnumbered).  As explained *supra*, "a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all."  **Dowling**, 778 A.2d at 686; **see Commonwealth v. Seibert**, 799 A.2d 54, 62 (Pa. Super. 2002) (holding that appellant waived his challenge to the weight of the evidence where his 1925(b) statement merely asserted that "[t]he verdict of the jury was against the weight of the credible evidence as to all of the charges").

In his final issue, Freeman contends that "there was unlawful jury tampering by the prosecution."  Brief for Freeman at 24.  Freeman has waived this issue because his appellate brief falls hopelessly short of

---

[11]  Freeman's appellate brief similarly lacks any discussion of the offenses for which he was convicted or the elements thereof.

presenting it in a manner sufficient to justify our review. Without even noting our standard of appellate review, Freeman's substantive argument on this claim begins and ends with the unsubstantiated assertion that "the prosecutor and the lead detective were in the jury room during deliberations."[12] Brief for Freeman at 24. Freeman then concludes, without any supporting legal analysis, that the trial court should have held an evidentiary hearing to address his allegation. *Id.*

"The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119." ***Commonwealth v. Beshore***, 916 A.2d 1128, 1140 (Pa. Super. 2007) (citation, quotation marks and brackets omitted). While this Court may overlook minor defects or omissions in an appellant's brief, we will not act as his or her appellate counsel. ***Bombar v. W. Am. Ins. Co.***, 932 A.2d 78, 93 (Pa. Super. 2007). Freeman has made no effort whatsoever to discuss the applicable law or to link the facts of his case to that law. His failure to develop a coherent legal argument in support of his claim results in waiver of this issue.

Judgment of sentence affirmed.

---

[12] In violation of Pa.R.A.P. 2119(e), Freeman does not direct us to the specific place in the record where he preserved this issue for our review. He also has failed to comply with Pa.R.A.P. 2111, which requires that an appellant append to his or her brief a copy of the statement of errors complained of on appeal filed with the trial court.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/2/2015