J-A14045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: X.A.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: X.A.F., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1447 MDA 2021 |

Appeal from the Dispositional Order Entered October 22, 2021
In the Court of Common Pleas of Lebanon County Juvenile Division at
No(s):  CP-38-JV-0000058-2021

BEFORE:   BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JUNE 02, 2022**

Appellant X.A.F., a minor, appeals from the dispositional order entered in the Court of Common Pleas of Lebanon County on October 22, 2021, adjudicating him delinquent on one count each of Firearms not to be carried without a license and Possession of a firearm by a minor.[1]  Upon review, we affirm.

The juvenile court detailed the relevant facts and procedural history herein as follows:

> At the hearing [held on October 22, 2021], X.A.F.'s mother ("Mother") testified that X.A.F. lives with her and her two other children. X.A.F. was sixteen years old and had his learners' permit on August 2, 2021. Mother owns three cars — a Pilot, an Accord, and a Civic. Her seventeen-year-old son usually drives the Accord. She is usually the only person who drives the Pilot and no one else has access to it. ( N.T. at 5-6)

---

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. §6106(a)(1) and 18 Pa.C.S.A. § 6110.1(a), respectively.

On August 2, 2021, Mother was working at the CVS Pharmacy on Quentin Road. While on her lunch break, she went out to her car and called to check on her children. After she had exited the car, she was still on the phone with X.A.F. when she realized that she had locked her keys inside the vehicle. The two decided that X.A.F. would drive the Pilot to her place of employment and bring her the extra key fob to her car from home. ( N.T. at 6-7)

On cross-examination, Mother explained that the family's home is on Orchard Avenue near 11th and Guilford Streets in the City of Lebanon and that she parks the Pilot on the street as she does not have a driveway. She usually leaves the door unlocked because the door tumblers are bad and it is sometimes difficult to get into the vehicle. She believed that neither of her sons knew that the door to the vehicle was kept unlocked. When asked about breakins, Mother noted that she has had problems with cellphone chargers being taken from the vehicle, but that she never reported the thefts to the police. She is the sole owner of the Pilot. ( N.T. at 8-10)

Mother explained that on August 2, 2021, X.A.F. drove the Pilot to CVS. When he arrived, he called her and told her to come outside. When she went outside, X.A.F. was out of the Pilot and an officer had stopped him while he was walking toward the building. She was able to speak with X.A.F. out of the officer's hearing range. X.A.F. told her "[s]omething along the lines of Adult Probation rides his ass or something like that. He also told me to stop arguing with the Officer and just let him search the truck." ( N.T. 10/22/21 at 10-11)

Mother testified that the rear window of the Pilot has heavy factory tint and five (5) percent tint all around on the back windows. She did not believe that the interior of the vehicle could be viewed from behind without a flashlight. The interior of the vehicle is very large and she believed it was impossible for someone sitting in the driver's side of the vehicle to reach under the front passenger seat due to the height of the center console and the height and width of the seats. On redirect, Mother testified that she had never found anything in the vehicle that did not belong to her; however, she stated that she had never really looked through it to check. ( N.T. at 11-12)

The Commonwealth next called Adult Probation Officer Sydnie Parker. Parker testified that she was familiar with X.A.F. through her previous experience as a Juvenile Probation Officer and that she has monitored his social media activity through Snapchat, Facebook and Instagram. ( N.T. at 14) Parker identified

a picture which was posted on X.A.F.'s Instagram on June 1, 2021 which showed X.A.F. sitting on a washer or dryer with a handgun in his hand. (Exhibit "3") There is a bomb/stick of dynamite emoji over the individual sitting next to him on another appliance. Parker noted that the grip of the gun was visible, but that the barrel could not be seen and that this is a common way for people to disguise contraband when posting on social media. Parker also identified a photograph of X.A.F. sitting on a rocking chair holding a gun with an extended clip and laser. (Exhibit "4") Like Exhibit "3", there was an emoji over the barrel of the gun and an emoji of something that he had on his lap. Parker noted that the extended mag could be seen at the bottom of the photograph and the laser beam could be seen on the left. Due to the emojis, just enough could be seen so that the item could be identified as a gun. Based on her training and experience, Parker opined that this is a common way to hide firearms on social media. ( N.T. at 15-17) She also confirmed that X.A.F. was on supervision at the time the photos were posted. On cross-examination, Parker confirmed that Exhibit "3" was posted on June 1, 2021 and Exhibit "4" was posted days later. However, she did not know when the photographs were taken. ( N.T. at 17-19, 21)

Tyler Rolshausen, a Dauphin County Probation/Parole Officer, also testified at the hearing. Rolshausen had previously been an officer with Lebanon County Probation and Parole and was working in that capacity on August 2, 2021. He explained on that date that he was in a vehicle with another officer when they witnessed X.A.F. riding in a vehicle with an individual who was being investigated by Juvenile Probation for dealing in firearms. The other individual was driving a blue Mini Cooper and X.A.F. was the passenger. As a result of his observation, Rolshausen called another Lebanon County Juvenile Probation officer who advised him that the two were on probation and did not have driver's licenses. While waiting for instructions from a supervisor, he lost sight of the blue Mini Cooper. However, he drove by X.A.F.'s approved address a short time later and observed X.A.F. standing by the car with the driver of the Mini Cooper. As a result of this observation, he sat at the bottom of 11th and Guilford Streets. A short time later, X.A.F. drove past him in a Honda Pilot. By that time, it had been confirmed that X.A.F. did not possess a valid driver's license and Juvenile Probation requested that they have the city police pull him over. ( N.T. at 23-25)

Rolshausen started to follow the Pilot on Guilford Street, heading south across the City to Quentin Road. They could see X.A.F. as he had the driver's side window down and he could be

seen in the driver's side mirror. He believed that, at that point, X.A.F. realized the officers were following him because he began maneuvering in and out of traffic and looking at them in the rearview mirror. As they turned south onto Route 72, X.A.F. began cutting in and out of parking lots. When he arrived at Bruno's parking lot, he slowed down to 10 miles per hour and the officers were able to observe his movements. ( N.T. at 25-26) Rolshausen explained that he could see X.A.F.'s silhouette moving all over the front of the vehicle, including on the passenger-side below the seat. (N.T. at 26-28) The officers continued to follow X.A.F. as he drove south on Route 72 to the next parking lot at which point North Cornwall police caught up to them and activated their lights. X.A.F. quickly parked the vehicle and tried to run into the CVS. When Rolshausen tried to stop him, X.A.F. did not want to speak with him. X.A.F.'s mother eventually came out of the CVS. The Pilot was searched after Mother gave consent and a silver and black Glock handgun was found under the passenger seat. (Exhibits "5A" and "5B") ( N.T. at 28)

Rolshausen explained that while he was speaking with X.A.F. and Mother, X.A.F. expressed that he was very upset that Rolshausen was stopping him because he was not X.A.F.'s assigned probation officer. Rolshausen noted that X.A.F. appeared to be very nervous during the vehicle search. When the officers approached the passenger-side of the vehicle during the search, X.A.F. yelled to them that the passenger-side door did not open. However, the officers were able to open the door and access the passenger-side. ( N.T. at 30-31)

On cross-examination, Rolshausen testified that Probation had been looking at X.A.F.'s entire friend group for involvement in dealing firearms based on other officers tracking of the group's social media accounts. He acknowledged that the gun depicted in X.A.F.'s Instagram photos did not have the same silver along the top as the Glock found in the Pilot. Rolshausen also acknowledged that it is not unusual for someone on probation to act nervous when they are stopped by the police. ( N.T. at 32-35)

On redirect, Rolshausen confirmed that X.A.F. was the only person observed to be in the Pilot. He also noted that, based on his training and experience, he believed that X.A.F.'s driving indicated that he was trying to evade Rolshausen's vehicle. ( N.T. at 36)

The Commonwealth next called Officer Bradley Brandt of the North Cornwall Police Department. Officer Brandt testified that he was on duty on August 2, 2021 and conducted the traffic stop

of the Pilot due to the request from Juvenile Probation. Officer Brandt determined that X.A.F. did not have a valid driver's license. He and the probation officers had received consent from Mother to search the vehicle. (N.T. at 38-39) He identified the silver Glock handgun which had been found under the passenger-side seat. (Exhibits "6A" through "6D") When the serial number of the gun was run, it came back "no record found." (N.T. 10/22/21 at 40) He ran an eTrace of firearms through the ATF which indicated that the gun had initially been purchased in Ohio. When Officer Brandt contacted the initial purchaser, he learned that it had been sold at a gun show in April 2021. There was no record that it belonged to X.A.F. or Mother. He confirmed that no DNA or fingerprints were taken from the gun. (N.T. at 39-41,43)

At the conclusion of the Commonwealth's case, X.A.F. moved for Judgment of Acquittal, relying on the legal arguments and caselaw contained in his Pretrial Memorandum of Law. X.A.F. argued that the Commonwealth had failed to present sufficient evidence to sustain a conviction on the firearms charges because it had established only that X.A.F. was present in a place or vehicle where a firearm was found and had not proven X.A.F.'s constructive possession of the gun. We denied the Motion and proceeded with the hearing. (N.T. at 44)

X.A.F. testified at the hearing. He explained that he had been speaking to Mother on the phone when she realized that she had locked her keys in her car at work. He offered to bring her extra key fob to her from home in the Pilot even though he only had a learners' permit. He admitted that he did not have an adult in the vehicle with him. He denied that he had a gun with him when he got into the Pilot and claimed that he had a seatbelt on the entire time he was driving. He further claimed that he drove into the parking lot prior to the one where the CVS was located because he thought it was the correct location. He realized that the probation officers were following him when they pulled in behind him in the Bruno's parking lot. He claimed that he was typing in "CVS" in his phone for directions at that time. He was going slowly because he was trying to drive the speed limit and denied that he was trying to evade the probation officers. He then drove to the parking lot where CVS is located. (N.T. at 44-48)

X.A.F. denied trying to run into the CVS when Officer Brandt activated the lights on the police vehicle, explaining that he was limping as he exited the Pilot due to an injured ankle. He did not reach for the gun while he was driving and denied knowing that the handgun was in the vehicle. He stated that it did not belong to him and he had no idea how it got into the vehicle. He

claimed to have only driven the vehicle once before. He explained that his erratic driving was due to the fact that the Pilot slips due to a transmission problem and that it sometimes drives awkwardly and has to be shifted manually. X.A.F. admitted that it was him holding the gun in the photographs, that they were taken in April 2021, and that he had posted them on social media. He also admitted that he had received a probation violation due to those pictures and was placed on house arrest as a result. (N.T. at 48-50)

On cross-examination, X.A.F. admitted that he was on supervision on August 2, 2021 and that one of the terms of supervision was that he was not to be in possession of firearms. He acknowledged that Mother is the only person who drives the Pilot and that his Mother did not own any firearms. (N.T. at 50-52)

At the conclusion of the hearing, we entered the Adjudication of Delinquency with an appropriate disposition. . . .

Juvenile Court Opinion, filed 12/29/21, at 2-10.

Appellant filed a timely notice of appeal on November 4, 2021. On that same date, the juvenile court entered its Order pursuant to Pa.R.A.P. 1925 directing Appellant to file a concise statement of the matters complained of on appeal, and Appellant complied on November 9, 2021.

In his brief, Appellant presents the following issues for our review:

A. Did the lower court err by denying Appellant's motion for judgment of acquittal at the close of the Commonwealth's case in chief?

B. Was the evidence sufficient to support Appellant's adjudication of delinquency for Firearms not to be carried without a license, 18 Pa.C.S.A. § 6106, and Possession of firearm by minor, 18 Pa.C.S.A. § 6110.1?

Brief for Appellant at 8 (unnecessary capitalization omitted).

In a footnote to his Statement of Questions Involved, Appellant indicates "[t]he essential difference between the first two issues is whether

- 6 -

there was sufficient evidence before and after Appellant's testimony. Accordingly, Appellant's argument will focus on sufficiency of the evidence."

*See* Brief for Appellant at 8 n. 1.

We review Appellant's sufficiency of the evidence challenge under the following standard:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth. The finder of fact is free to believe some, all, or none of the evidence presented.

> *In Interest of P.S.*, 158 A.3d 643, 650 (Pa.Super. 2017) (cleaned up). Further, "[b]ecause evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Interest of D.J.B.*, 230 A.3d 379, 387 (Pa.Super. 2020) (cleaned up).

*Int. of E.L.W.,* 2022 WL 1100457 at *2 (Pa. Super. Apr. 13, 2022).

Prior to addressing the merits of Appellant's issues, we must determine whether they have been properly preserved for appellate review. As this Court has explained, "[i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." **Commonwealth v. Freeman**, 128 A.3d 1231, 1248 (Pa.Super. 2015). "Such specificity is of particular importance in cases where, as here, the [a]ppellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." **Id.** (quoting **Commonwealth v. Gibbs**, 981 A.2d 274, 281 (Pa.Super. 2009), *appeal denied*, 607 Pa. 690, 3 A.3d 670 (2010). Even if the trial court correctly guesses the issue an appellant raises on appeal and writes an opinion pursuant to that supposition, the issue is still waived. **Commonwealth v Heggins**, 809 A.2d 908, 911 (Pa.Super. 2002).

In **Freeman**, the appellant's concise statement alleged, "the evidence at trial was insufficient to sustain a conviction of the crimes charged." **Freeman**, 128 A.3d at 1247-48. This Court explained that the statement was "far too vague to warrant meaningful appellate review" as it did not specify which elements of the crime or even which crimes the Commonwealth failed to prove beyond a reasonable doubt. **Id.** at 1248; **see also** Pa.R.A.P. 1925(b)(4)(ii) & (vii) (providing, respectively, that "[t]he

Statement shall concisely identify each ruling or error that the appellant intends to challenge **with sufficient detail to identify all pertinent issues for the judge**[,]" and that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph [ ] are waived." (emphasis added).

Similarly, Appellant's concise statement herein simply asserted:

1. The trial court erred in denying [Appellant's] Motion for Judgment of Acquittal, as there was insufficient evidence to support adjudication.

2. The trial court erred in adjudicating [Appellant] delinquent, as there was insufficient evidentiary support to find that [Appellant] committed a delinquent act.

3. The trial court erred in adjudicating [Appellant] delinquent, as it appears that the court applied a preponderance of the evidence standard rather than reasonable doubt. [2]

Statement of Errors Complained of on Appeal, filed 11/9/21, at ¶¶ 1-3.

Appellant was adjudicated delinquent of two crimes and each crime contains multiple elements. The subsection of Firearms not to be carried without a license states at issue herein states:

a.     **offense defined.**

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

_____

[2] Appellant has withdrawn the third claim he had raised in his concise statement. **See** Brief for Appellant at 8 n.1.

- 9 -

> (2) A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6106(a)(1).

Possession of a Firearm by a minor is defined, in relevant part, as follows:

> **a) Firearm.--**Except as provided in subsection (b), a person under 18 years of age shall not possess or transport a firearm anywhere in this Commonwealth.

18 Pa.C.S.A. § 6110.1.

As was the case in **Freeman**, **supra**, Appellant's concise statement did not specify any crime or any element(s) thereof which the Commonwealth failed to prove beyond a reasonable doubt. Therefore, Appellant waived his challenge to the sufficiency of the evidence to support his adjudications of delinquency on appeal for lack of sufficient specificity in his concise statement.

Adjudication affirmed.[3]

---

[3] This Court may affirm the trial court's order on any valid basis. **Plasticert, Inc. v. Westfield Ins.Co.**, 923 A.2d 489, 492 (Pa.Super. 2007).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/02/2022