J-S82003-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ANDRE LAMONT BUTLER, | |
| Appellant | No. 1591 WDA 2016 |

Appeal from the Judgment of Sentence Entered September 20, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0002797-2016

BEFORE:  BENDER, P.J.E., STEVENS, P.J.E.[*], and STRASSBURGER, J.[**]

MEMORANDUM BY BENDER, P.J.E.:                FILED FEBRUARY 26, 2018

Appellant, Andre Lamont Butler, appeals from the judgment of sentence of three years' probation, imposed following his conviction for carrying a firearm without a license, 18 Pa.C.S. § 6106(a)(2). Appellant challenges the trial court's denial of his motion to suppress the seized firearm. After careful review, we affirm.

The record in this matter is limited. Appellant's trial consisted entirely of his stipulation to the facts set forth in the affidavit of probable cause, followed by the court's verdict. N.T., 9/20/16, 2-3. The affidavit of probable cause stated, verbatim, as follows:

_____

[*] Former Justice specially assigned to the Superior Court.
[**] Retired Senior Judge assigned to the Superior Court.

Your affiant in this case is Officer Fred Hill. I have been a Police Officer over 18 years and in that time, I have made countless arrests and convictions for firearms and narcotics related offenses. On Saturday, 2/20/16, at appx 1118 Hours, I was on routine patrol near the Dollar General Store, Clonmel @ Hoffman Blvd. I observed a white Buick sedan bearing PA# JVX-2074 with black window tint covering the side windows. I ran the registration and it was suspended due to insurance. I conducted a traffic stop for the vehicle code violations. Upon approaching the vehicle, I knew the driver to be DEFENDANT ANDRE BUTLER and the passenger was identified as James Brooks. While speaking with Butler, I observed him to be very nervous. I asked Butler if he had a weapon on him. Butler stated that he had a gun. I asked Butler if he had a permit, he stated no. Upon arrival of Officer Ernst, we removed Butler from the vehicle and he was detained. We removed Brooks from the vehicle and he was detained. I recovered a Smith and Wesson 40 caliber firearm with a laser from the unlocked glove compartment. Serial # DTD0121. Butler stated the gun was his and he thought he could carry it as long as it was not on his body. Butler is a convicted Felon. The firearm was registered to a Ronald Norman. Butler was checked and he does not have a gun permit.

I BELIEVE PROBABLE CAUSE EXISTS FOR THE LISTED CHARGES.

Criminal Complaint, 2/2/16, at 6 (affidavit of probable cause).

Following Appellant's arrest and the filing of the criminal complaint, the Commonwealth filed a criminal information on April 25, 2016. Therein, the Commonwealth charged Appellant with carrying a firearm without a license (count 1), and three Motor Vehicle Code violations (counts 2-4). Appellant filed a written suppression motion on September 20, 2016 – the same day as his non-jury trial.

On the day of trial, the Commonwealth withdrew counts 2-4, the trial court denied Appellant's suppression motion (without hearing testimony or argument), and the trial court entered a verdict of guilty following

- 2 -

Appellant's stipulation. N.T., 9/20/16, 2-3. The court then immediately sentenced Appellant to three years' probation. Id. at 3. Appellant filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued its Rule 1925(a) opinion on January 12, 2017.

Appellant now presents the following question for our review:

Did the trial court err in failing to suppress the gun found in the vehicle because the questioning of [Appellant] was an investigative detention without reasonable suspicion?

Appellant's Brief at 4 (unnecessary capitalization omitted).

Before we reach the merits of Appellant's claim, we must begin by addressing the Commonwealth's assertion that it is subject to waiver due to his failure to articulate it with adequate specificity in the trial court. See Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); Commonwealth v. Strunk, 953 A.2d 577, 579 (Pa. Super. 2008) ("Even issues of constitutional dimension cannot be raised for the first time on appeal.").

Here, Appellant essentially asserts that "once the purpose of the traffic stop was achieved[,]" the police conducted what amounted to an investigatory detention by asking Appellant if he had a gun. Appellant's Brief at 8. As the Commonwealth correctly notes, Appellant "presents an argument based on the line of cases flowing from the decision in Commonwealth v. Strickler, 757 A.2d 884 (Pa. 2000)." Commonwealth's Brief at 4.

In Commonwealth v. Moyer, 954 A.2d 659 (Pa. Super. 2008), this Court summarized the facts and legal impact of the Strickler decision, as well as its companion case, Commonwealth v. Freeman, 757 A.2d 903 (Pa. 2000), as follows:

> The following facts informed the Strickler decision. Late one night, a police officer observed two men standing on the side of a rural road next to their parked car. The officer stopped to ascertain whether they needed assistance. As he passed the vehicle, the officer noticed that it contained a cooler with unopened beer cans. In response to the officer's questions, the men stated that they were leaving a local racetrack and had stopped to urinate. The officer asked for a driver's license, which the two men supplied.
>
> As the first officer was checking whether the individuals had outstanding warrants, another officer arrived in a second car and parked. The first officer returned the men's licenses and admonished them against urinating on a stranger's property. The officer started to walk toward his cruiser, turned around, and without the existence of any suspicion of criminal activity, asked Strickler if his car contained anything illegal. Strickler responded negatively, and the officer asked if he could search the car. After Strickler hesitated, the officer informed Strickler that he did not have to give his consent to search. Strickler nevertheless consented, and the officer discovered drug paraphernalia.
>
> As the Commonwealth had readily conceded that there were no facts to support a reasonable suspicion that Strickler was engaged in criminal activity, the sole question presented to the Supreme Court was whether Strickler had been subjected to a seizure within the meaning of the Constitution when, after returning Strickler's documents, the police started to ask questions. The Court observed:

> To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. See [United States v.] Mendenhall, 446 U.S. [544,] 554 … [(1980)]; [Florida v.] Royer, 460 U.S. [491,] 502 … [(1983)]. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. See Mendenhall, 446 U.S. at 553.… In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

[Strickler, 757 A.2d at] 890–91 (footnotes omitted).… The Strickler Court noted that by its nature, this test is imprecise since it is "designed to assess the coercive effect of police conduct, taken as a whole rather than focus on particular details of that conduct in isolation." Id. at … 890.

Strickler acknowledged that his initial detention was valid but contended that once his license was returned, there was a second detention that was not supported by reasonable suspicion, rendering his consent to search his vehicle infirm. The suppression court in Strickler had ruled that once a valid detention had been concluded, it was improper for police to continue an investigative interaction with a citizen. Thus, the suppression court essentially ruled that a detention could never devolve into a mere encounter. Our Supreme Court disagreed and noted that such an approach failed to take into consideration the fact that the officer had informed Strickler he did not have to consent to the search and that there was an absence of any show of authority on the part of the officer.

The Supreme Court ruled that after an initial valid detention has concluded, the crucial determination of whether a continuing interdiction constitutes a mere encounter or a constitutional seizure centers upon whether an individual would objectively believe that he was free to end the encounter and refuse a request to answer questions or conduct a search. In making this determination, we must examine the totality of the

circumstances surrounding the interaction between the police and the citizen. A non-exclusive list of factors to be used in assessing whether police conducted a mere encounter after completion of a traffic stop includes: 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) "the degree to which the transition between the traffic stop/investigative detention and the subsequent encounter can be viewed as seamless, ... thus suggesting to a citizen that his movements may remain subject to police restraint," id.; 9) the "presence of an express admonition to the effect that the citizen-subject is free to depart is a potent, objective factor;" and 10) whether the citizen has been informed that he is not required to consent to the search. Id. at ... 898–899.

The Court made a critical observation: when an individual has been subjected to a valid detention and the police continue to engage that person in conversation, the citizen, having been in official detention, is less likely to understand that he has the right to refuse to answer questions or a search. Furthermore, while acknowledging the importance of the ninth factor, the Court stressed that "conferral of the 'free-to-go' advice is, itself not a reason to forego a totality assessment" and therefore does not constitute a controlling factor in assessing whether a person would actually credit a police indication that he was free to leave. Id. at ... 899 n. 24.

The Strickler Court held that the defendant therein had not been subjected to a seizure after his documentation was returned. The Court noted that the defendant had not been seized initially by police since he voluntarily had stopped and exited his car to urinate. Further, it opined that the police were not coercive, did not display guns, and had told the defendant that he was free to refuse a search of his vehicle. Police had not directed the defendant to move, did not use coercive language or tone, and there was a clear ending to the first interaction when police returned the defendant's documents. Finally, the Court observed that the isolated location and time of night militated in favor of a finding that the defendant had been seized, but it concluded that those two factors did not outweigh those in favor of a finding that the interdiction was a mere

encounter. It held that Strickler was not seized when he granted his permission to search the car, and thus, his consent to search was voluntary.

On the same day of the opinion in Strickler, the Supreme Court issued its decision in Commonwealth v. Freeman, … 757 A.2d 903 (Pa. 2000). In that case, the state police noticed two vehicles on an interstate highway traveling together. The two automobiles closely followed one another and were switching lanes simultaneously. A different police cruiser stopped each vehicle. One officer asked Freeman, a driver who was traveling with two passengers, if she was lost or having a problem with the driver of the other car. Freeman responded that she had switched lanes because she was in the wrong lane to continue onto her proper destination and that she was not traveling with the other car. The trooper asked for her driver's license and vehicle registration, returned to his cruiser, and initiated a check on the documents. At that time, he was radioed by the trooper who had stopped the other vehicle and informed that the driver said he was following Freeman's car because it was experiencing difficulties.

The trooper re-approached Freeman's car, gave her a warning for improperly changing lanes, returned her documents, and stated that she was free to leave. The trooper walked away, but Freeman's car remained stopped. The trooper then returned to Freeman's vehicle and asked her again whether she was traveling with the other car. After she repeated a negative response, the trooper indicated that the occupants of the other vehicle had contradicted that information. He ordered her from her car and asked to search it. Freeman gave permission, and contraband was discovered.

Our Supreme Court suppressed the fruits of that search, concluding that police had initiated a seizure when they re-approached Freeman's car and ordered her to exit it. The Court reasoned that a seizure had occurred despite conferral of the "free to go" language because the "trooper's subsequent actions were inconsistent with his statement to Freeman that she was free to leave." Id. at … 907. Police conduct supporting a determination that Freeman objectively and reasonably believed she was, in fact, not free to go included: 1) the officer returned to Freeman's vehicle and asked her about the second car; 2) he pointed out the discrepancies between her statements and those of the other driver; and 3) "most significantly," the officer "asked

her to step out of the vehicle prior to the request for consent [to search]." Id. Since the consent to search was vitiated by a detention that was not supported by reasonable suspicion, the Court suppressed the fruits of that search.

Moyer, 954 A.2d at 664–66.

In this context, it is clear that a Strickler/Freeman claim is an argument that is entirely dependent on a nuanced set of factual preconditions. To be successful, such a claim must establish that, following the termination of an otherwise valid but temporary seizure, police reinitiate contact in circumstances that constitute a distinct detention, one requiring its own showing of reasonable suspicion not wholly reliant on the facts that predicated the initial detention. Needless to say, Strickler/Freeman claims are not implicated in every instance of police stopping a motor vehicle.

Instantly, the Commonwealth argues:

Appellant agreed that his suppression motion should be decided on the affidavit of probable cause and did not offer any testimony to support his current assertion that he did not feel free to leave; thus there is no factual basis for that assertion. He also did not assert that the stop had ended before Officer Hill questioned him about the gun; and the affidavit contains nothing to support that inference. The Commonwealth certainly understands its obligation to prove that evidence was seized in a constitutional manner. Commonwealth v. Wallace, 42 A.3d 1040 (Pa. 2012). But a litigant has to articulate a theory of suppression so that the Commonwealth knows what aspect of a seizure and search is being challenged. No lawyer, whether defense counsel or prosecutor, is a seer. Appellant, who was represented by the Office of Public Defender, which currently represents him, did not put anyone on notice that he was asserting that Officer Hill had completed the traffic stop and then asked questions about the gun.

Commonwealth's Brief at 6-7.

We agree with the Commonwealth. Nothing in Appellant's suppression motion could reasonably be perceived as having raised a Strickler/Freeman claim. Beyond Appellant's boilerplate citation of the United States and Pennsylvania Constitutions' search and seizure clauses, no further clarifying citations were set forth in his suppression motion. There was no mention of Strickler, Freeman, or any other relevant or related case law. The motion appears solely to challenge the initial stop of Appellant's vehicle. Suppression Motion, 9/20/16, at 10 ("Officers observed no violations of the motor vehicle code prior to initiating the traffic stop on the vehicle in question."). With that predicate in mind, the motion goes on to argue the inapplicability of various exceptions to the warrant requirement, such as the plain view exception, independent source, inventory search, and protective sweep. Id. at 11c, d, e, and g. Despite specifically referencing these search-and-seizure legal doctrines with some specificity, no mention was made of Strickler and/or Freeman, nor was any vague reference to the factual prerequisites of such a claim offered.

In Commonwealth v. Freeman, 128 A.3d 1231 (Pa. Super. 2015), this Court warned:

> Although the burden in suppression matters is on the Commonwealth to establish "that the challenged evidence was not obtained in violation of the defendant's rights," Pa.R.Crim.P. 581(D), that burden is triggered only when the defendant "state[s] specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." Commonwealth v. McDonald, 881

A.2d 858, 860 (Pa. Super. 2005). Thus, when a defendant's motion to suppress does not assert specifically the grounds for suppression, he or she cannot later complain that the Commonwealth failed to address a particular theory never expressed in that motion. McDonald, 881 A.2d at 860; Commonwealth v. Quaid, 871 A.2d 246, 249 (Pa. Super. 2005) ("[W]hen a motion to suppress is not specific in asserting the evidence believed to have been unlawfully obtained and/or the basis for the unlawfulness, the defendant cannot complain if the Commonwealth fails to address the legality of the evidence the defendant wishes to contest.").

Id. at 1241–42 (emphasis added). On this basis, we conclude that Appellant waived his Strickler/Freeman claim, as he failed to present such a claim in his suppression motion.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/26/2018