J-S04041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KHALID A. MUHAMMAD | : | |
| | : | |
| Appellant | : | No. 1381 MDA 2018 |

Appeal from the Judgment of Sentence Entered July 20, 2018
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0004247-2016

BEFORE: SHOGAN, J., OTT, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.: **FILED FEBRUARY 19, 2019**

Appellant Khalid A. Muhammad appeals from the judgment of sentence entered in the Court of Common Pleas of Berks County on July 20, 2018, following a non-jury trial.[1,2] Appellant's counsel also has filed a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and its Pennsylvania counterpart **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009) (hereinafter "**Anders** Brief") together with a Petition to Withdraw as Counsel and a letter advising Appellant of his rights pursuant to **Commonwealth v.**

---

[1] Appellant was tried along with his sister, who is not a party to this appeal.
[2] Appellant completed a written Jury Trial Waiver Colloquy and Waiver of Jury Trial Form. Appellant also was questioned and waived his right to a jury trial on the record prior to the commencement of trial. N.T. Trial, 9/10/18, at 4-8.

---

* Former Justice specially assigned to the Superior Court.

***Millisock***, 873 A.2d 748 (Pa.Super. 2005).[3]  Following our review, we grant counsel's petition to withdraw and affirm the judgment of sentence.

The record reveals that in January of 2014, a Custody Order was entered between Appellant and A.R., the mother of his child, wherein the parties were to share legal custody, A.R. was granted primary physical custody of their minor child P.M., and Appellant received weekend visitation. N.T. Trial, 6/15/18, at 73-75.[4]  In March of 2015, A.R. was incarcerated, and Appellant received sole custody of the child at his home in Philadelphia until her release in June of 2016. ***Id***. at 75-76.  Upon A.R.'s parole to a halfway house in Reading, she contacted Appellant to arrange a visitation with P.M. on a weekend. ***Id***. at 76-78.  After A.R. was released and had a home plan, she contacted Appellant on a Wednesday to arrange to pick up her son on the ensuing weekend. ***Id***. at 77-78.  Appellant did not ask A.R. where she was taking the child, and she did not tell Appellant her address. ***Id***. at 95-96.

When A.R. brought three-year-old P.M. back to her house, she noticed bruises and hand marks which extended from the back of his knees to the middle of his back.  Angry and upset, A.R. immediately called Appellant. ***Id***.

---

[3] ***Anders*** set forth the requirements for counsel to withdraw from representation on direct appeal, and our Supreme Court applied ***Anders*** in ***Santiago***.

[4] The child was born in April of 2013. To protect the minor child's identity, throughout this memorandum we use the mother's and child's initials, as well as the initials of mother's older child who testified at trial, and we have replaced other identifying proper names with generic labels.

at 78-79. While Appellant initially stated the bruises were the result of a hot bath, Appellant eventually admitted to spanking the child as punishment for his leaving the water running after he had washed his hands when he used the bathroom in the middle of the night. Appellant told A.R. he had not hit the child hard and that the child did not cry but rather was "taking it brave." *Id*. at 80. A.R. informed Appellant that she would be reporting the abuse and that she would not be returning the child to his custody. *Id*. at 80.

Due to A.R.'s refusal to return the child or communicate with Appellant regarding him, Appellant testified he filed a report with the Philadelphia police and sought advice from his "best friend," an unnamed police officer, and his former attorney who told him the January 7, 2014, Custody Order was invalid because six months had passed and A.R. had been incarcerated since it was entered. Counsel advised Appellant to go to seek the help of police in Reading and retrieve the child. *Id*. at 137-139. Appellant asked his sister T.M. to help him. *Id*. at 137-140. T.M. and an unidentified woman picked up Appellant on the Morning of Monday, August 15, 2016, and headed to Berks County.

Upon arrival in Reading, Appellant visited the courthouse where he was informed he would need to contact the Reading City Police. There, he learned a report could not be filed as the matter involved custody, not a kidnapping, and Appellant called 911. *Id*. at 140. The police referred Appellant to the halfway house where A.R. had been staying and/or to the state probation

office in Reading, the latter of which provided Appellant with the address A.R. had listed. *Id*. at 140-141.

On August 15, 2016, which was within a week of A.R.'s conversation with Appellant, A.R.'s then seventeen-year-old daughter L.D-R. was babysitting P.M. at A.R.'s residence while A.R. was at work. *Id*. at 12-14. At approximately 2:30 p.m., while L.D-R. was out front of the home with the child, an unknown woman inquired about where to buy cigarettes, and L.D-R. referred her to a store around the corner. *Id*. at 14-15. Shortly thereafter, a silver Kia pulled up in front of the house. Appellant exited the passenger side, approached P.M., picked him up, and attempted to place him in the car. *Id*. at 15-16.

A struggle ensued between L.D-R, Appellant, his sister, and the unidentified woman who previously inquired about cigarettes. The fray was captured on video surveillance. Eventually, Appellant and the two women were able to get P.M. into the Kia, and when L.D-R. opened a back door to retrieve the child, the unidentified woman pulled her into the back seat. The Kia sped away, leaving Appellant behind. *Id*. at 17-24. P.M. sustained minor bruising in the struggle. *Id*. at 88-91.

L.D-R. rolled down the windows and shouted out to the public for help because she and the child were being kidnapped. Appellant's sister and the unidentified woman, who was seated next to her in the back seat, told L.D-R. she would not be returned to her mother. *Id*. at 25-26. After several hours,

- 4 -

the Kia stopped at a train station and met another vehicle. P.M. was removed from the Kia and Appellant's mother took the child's place therein. *Id*. at 26-29. L.D-R. was informed she was in Philadelphia and was taken to a store where Appellant's mother bought her a shirt and sandals, as the teenager was barefoot and her shirt had been ripped in the struggle, and threw away her ripped shirt. *Id*. at 31-32.

The group proceeded to a Greyhound station, where Appellant's mother bought L.D-R. a bus ticket back to Reading. At the bus station, the teenager realized she was, in fact, in Philadelphia. *Id*. at 32. Alone and upset at the bus station, she used a stranger's phone to contact A.R. who instructed her to wait for the police. Frightened, L.D-R. boarded a Greyhound bus back to Reading. *Id*. at 33. When the bus stopped in Norristown, police escorted the teenager to the police station, where she was met by Reading police officers. *Id*. at 33-34. L.D-R. had bruises on her forearms, chest, and one on her back. *Id*. at 35-36.

The next day, on August 16, 2016, A.R. received a call from Appellant's mother, who stated that P.M. could be picked up on Broad Street in Philadelphia, and several Reading police officers travelled with A.R. to Philadelphia. *Id*. at 86. Several attempts to reach Appellant's mother by telephone and text went unanswered. *Id*. at 87. Eventually, A.R. was able to retrieve the child at 8:30 p.m. *Id*. at 87-88. P.M. had bruising on his body

from old injuries as well as additional injuries including a bump on his forehead and bruising on his back. *Id*. at 88-90.

Following the bench trial, on June 15, 2018, Appellant was convicted of Conspiracy to Commit Unlawful Restraint, two counts of Unlawful Restraint, Conspiracy to Commit False Imprisonment, Interference with Custody of Children, Conspiracy to Commit Interference with Custody and two counts of False Imprisonment.[5] Appellant was sentenced on July 20, 2018, to two (2) concurrent sentences of one (1) year to four (4) years in prison, a consecutive prison sentence of nine (9) months to thirty-six (36) months, a consecutive sentence of five (5) years of special probation and another sentence of five (5) years of special probation to run concurrently to the other.

Appellant filed a timely notice of appeal on August 17, 2018, and on that same date the trial court entered its Order directing Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On September 7, 2018, Appellant filed a counselled "Notice of Intention to File Anders/McClendon Brief in Lieu of Concise Statement of Appeal pursuant to 1925(c)(4)." Notwithstanding the document's title, it is the functional equivalent of a concise statement, for therein Appellant presented the following claims to be raised on appeal:

1. The trial court erred in finding [ ] Appellant guilty because the verdict was against the weight of the evidence.

---

[5] 18 Pa.C.S.A. §§ 903(a)(1)-2902(a)(1); 2902(a)(1); 903(a)(1)-2903(a); 2904(a); 903(a)(1)-2904(a); and 2903(a), respectively,

2. The trial court erred in finding [ ] Appellant guilty because the verdict was against the sufficiency of the evidence.

*See* Statement, filed 9/7/18.

On September 14, 2018, the trial court filed its Statement in Lieu of Opinion" wherein it indicated that after a review of the record, it concurred with counsel's determination that no meritorious issues exist for direct appeal.

Thereafter, counsel initially filed only an **Anders** Brief to which he had attached a letter advising Appellant of his rights pursuant to **Commonwealth v. Millisock**, 873 A.2d 748 (Pa.Super. 2005). In a *Per Curiam* Order filed on December 11, 2018, this Court directed counsel additionally to file a petition to withdraw as counsel and provide Appellant with a copy of the petition. Counsel complied and filed the petition which contains proof of service on Appellant on January 2, 2019. The Commonwealth filed an appellate brief on January 8, 2019.

The **Anders** Brief contains the following "Statement of the Questions Involved":

1. Was the evidence adduced at trial insufficient to support the jury's [sic] verdict?

2. Was the verdict of the trial court below against the weight of the evidence?

3. Should ineffective assistance of counsel be an issue raised at this point in the case?

**Anders** Brief at 5.

Prior to addressing any question raised on appeal, we must first resolve counsel's petition to withdraw. ***Commonwealth v. Goodwin***, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*); ***see also Commonwealth v. Rojas***, 874 A.2d 638, 639 (Pa.Super. 2005) (citation omitted) (stating "[w]hen faced with a purported ***Anders*** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw."). There are procedural and briefing requirements imposed upon an attorney who seeks to withdraw on appeal pursuant to which counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*) (citation omitted). In addition, our Supreme Court in ***Santiago*** stated that an ***Anders*** Brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, ***supra*** at 178-79, 978 A.2d at 361. Counsel also must provide the appellant with a copy of the ***Anders*** Brief, together with a letter that advises

the appellant of his or her right to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the **Anders** brief." **Commonwealth v. Nischan**, 928 A.2d 349, 353 (Pa.Super. 2007) (citation omitted). Substantial compliance with these requirements is sufficient. **Commonwealth v. Wrecks**, 934 A.2d 1287, 1290 (Pa.Super. 2007).

Once counsel has satisfied the above requirements, this Court must undertake an independent examination of the record to determine whether the appeal is wholly frivolous. **See Commonwealth v. Yorgey**, 188 A.3d 1190, 1195 (Pa.Super. 2018) (*en banc*); **see also Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa.Super. 2015) (holding that "this Court must conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel.").

Herein, as previously stated, counsel first filed an **Anders** Brief on December 6, 2018, and pursuant to this Court's Order, his Petition to Withdraw as Counsel followed on January 2, 2019. In his petition to withdraw, counsel states that after a conscientious examination of the record and communication with Appellant, he has determined that an appeal herein is wholly frivolous. **See** Petition to Withdraw as Counsel at ¶¶ 4-6. Counsel further explains that he notified Appellant of the withdrawal request and forwarded a copy of the **Anders** Brief to Appellant together with a letter

- 9 -

explaining his right to proceed *pro se* or with new, privately-retained counsel to raise any additional points or arguments that Appellant believed had merit. ***See id.*** at ¶¶ 7-8; ***see also*** attached Letter to Appellant. Counsel indicates that a copy of the Petition to Withdraw as Counsel and notice letter were served on Appellant, and these documents correctly inform Appellant of her rights.

In the ***Anders*** Brief, counsel provides a summary of the facts and procedural history of the case with citations to the record, refers to evidence of record that might arguably support the issues raised on appeal, provides citations to relevant case law, and states his reasoning and conclusion that the appeal is wholly frivolous. ***See Anders*** Brief at 5-21. Accordingly, counsel has complied with all of the technical requirements of ***Anders*** and ***Santiago***. As Appellant filed neither a *pro se* brief nor a counseled brief with new, privately-retained counsel, we proceed to examine the issues of arguable merit identified in the ***Anders*** Brief.

Therein, counsel first challenges whether the evidence had been sufficient to support the verdict. In considering this claim, we bear in mind the following:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of

- 10 -

innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

**Commonwealth v. Estepp**, 17 A.3d 939, 943-944 (Pa.Super. 2011).

Prior to addressing the merits of this issue, we first must determine whether it has been properly preserved for appellate review. As this Court has explained, "[i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." **Commonwealth v. Freeman**, 128 A.3d 1231, 1248 (Pa.Super. 2015). "Such specificity is of particular importance in cases where, as here, the [a]ppellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." **Id.** (quoting **Commonwealth v. Gibbs**, 981 A.2d 274, 281 (Pa.Super. 2009), *appeal denied*, 607 Pa. 690, 3 A.3d 670 (2010).

In **Freeman**, the appellant's concise statement alleged, "the evidence at trial was insufficient to sustain a conviction of the crimes charged." **Freeman**, 128 A.3d at 1247-48. This Court explained that the statement was "far too vague to warrant meaningful appellate review" as it did not specify which elements of the crime or even which crimes the Commonwealth failed

- 11 -

to prove beyond a reasonable doubt. ***Id.*** at 1248; ***see also*** Pa.R.A.P. 1925(b)(4)(ii) & (vii) (providing, respectively, that "[t]he Statement shall concisely identify each ruling or error that the appellant intends to challenge **with sufficient detail to identify all pertinent issues for the judge**[,]" and that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph [ ] are waived." (emphasis added).

Similarly, Appellant's concise statement herein simply asserted "[t]he trial court erred in finding [ ] Appellant guilty because the verdict was against the sufficiency of the evidence." Appellant was convicted of eight counts, and each crime contains multiple elements; therefore, Appellant waived this issue on appeal for lack of sufficient specificity in his concise statement.

Nevertheless, even if we were to deem this issue as having been properly preserved, we would determine that it would not entitle Appellant to relief. ***See Yorgey***, ***supra*** (stating that this Court must undertake an independent examination of the record to determine whether the appeal is wholly frivolous). The argument in support of this claim in the ***Anders*** Brief highlights the ways in which the verdict reflects the trial court's discrediting of Appellant's testimony in favor of that presented by the Commonwealth witnesses. ***Anders*** Brief at 12-16.

Prior to sentencing, the trial court indicated that it "considered much" including "the sentencing guidelines[, ] the briefs and argument made by

counsel here today as well as the recommendations of counsel" and "prominently the trial testimony which [it saw personally]." N.T. Sentencing, 7/20/18, at 32. The trial court stressed that with regard to the evidence presented at trial, "the most troubling was the video during which no words were spoken. . . . The quality of this video was pretty much as good as you find in these kinds of situations, and it was very disturbing. . . . This is not something that someone who believes that they have a Custody Order in their favor or a custody practice in their favor would do. So that can only lead me to conclude that [Appellant] was well aware of the fact that what he was doing was unlawful and wrong." *Id*. at 32-33 The trial court further remarked that that it took into account and "frankly, rejected the testimony of [Appellant] at trial" as it defied "all possible credibility." *Id*. at 33.

It is well-established that "the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced[,] is free to believe all, part or none of the evidence." **Commonwealth v. Kearney**, 92 A.3d 51, 64 (Pa.Super. 2014) (citation omitted), *appeal denied*, 627 Pa. 763, 101 A.3d 51 (2014); *see also* **Commonwealth v. Furness**, 153 A.3d 397, 401, 404 (Pa.Super. 2016), *appeal denied*, 642 Pa. 554, 170 A.3d 1034 (2017) (stating that assessments of credibility and conflicts in the evidence are for the fact-finder to resolve, and that this Court is not permitted to reexamine credibility determinations or substitute our judgment for that of the fact-finder). Accordingly, the trial court, as the finder of fact, was entitled

to discredit the testimony of Appellant and to weigh any purported conflicts in the evidence.

The **Anders** Brief next argues the evidence was against the weight of the evidence. A challenge to the weight of the evidence must first be raised at the trial level "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." **In re J.B.**, 630 Pa. 124, 106 A.3d 76, 97 (2014) (citation omitted). Appellant failed properly to preserve his weight of the evidence claim by raising the issue before the trial court as required; therefore, this claim also is waived. **Commonwealth v. Akrie**, 159 A.3d 982, 989 (Pa.Super. 2017), **see also** Pa.R.Crim.P. 607.

Finally, counsel raises a claim that Appellant's trial counsel was ineffective. **Anders** Brief at 19. As a general rule, claims of ineffective assistance of trial counsel should be presented in a collateral proceeding. **Commonwealth v. Grant**, 572 Pa. 48, 813 A.2d 726 (2002). However, the Supreme Court of Pennsylvania established an exception to the rule it announced in **Grant**. In **Commonwealth v. Bomar**, 573 Pa. 426, 466, 826 A.2d 831, 845 (2003), the Supreme Court held that claims of ineffectiveness may be heard on direct appeal, where the claims were raised before the trial court, and a record was developed. **Bomar**, 573 Pa. at 466, 826 A.2d at 845. More recently, the Supreme Court clarified that

> where the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness, including non-record-based claims, on

post-verdict motions and direct appeal, we repose discretion in the trial courts to entertain such claims, but only if (1) there is good cause shown, and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA.

*Commonwealth v. Holmes*, 621 Pa. 595, 598–99, 79 A.3d 562, 564 (2013) (footnote omitted).

Herein, the trial court did not conduct an evidentiary hearing or develop a record; therefore, Appellant's claims of ineffective assistance of counsel are denied without prejudice to Appellant's proper presentation of them in a timely filed, procedurally compliant PCRA petition.

After examining the issues contained in the *Anders* Brief, we concur with counsel's assessment that the appeal is wholly frivolous. "Furthermore, after conducting a full examination of all the proceedings as required pursuant to *Anders*, we discern no non-frivolous issues to be raised on appeal." *Yorgey*, 188 A.3d at 1195. Thus, we grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

Petition to withdraw as counsel granted.  Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/19/2019