**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TERRY LYN MOHLER | : | |
| | : | |
| Appellant | : | No. 983 MDA 2019 |

Appeal from the Judgment of Sentence Entered February 11, 2019
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0000095-2017

BEFORE: BENDER, P.J.E., KING, J., and MUSMANNO, J.

MEMORANDUM BY KING, J.:          **FILED: FEBRUARY 5, 2020**

Appellant, Terry Lyn Mohler, appeals from the judgment of sentence entered in the Berks County Court of Common Pleas, following his jury trial conviction for recklessly endangering another person ("REAP") and bench trial conviction for reckless driving.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  At approximately 3:00 p.m. on July 15, 2016, Appellant completed his shift as a PennDOT sign foreman.  Appellant entered his PennDOT vehicle, a 2012 Ford F550 crew cab truck, and proceeded to drive southbound on Route 61 in Reading.  Appellant had just passed Bellevue Avenue when he noticed a dirt bike exit the parking lot at Ken's Cycle Repair and turn onto Route 61

---

[1] 18 Pa.C.S.A. § 2705 and 75 Pa.C.S.A. § 3736(a), respectively.

southbound.

This portion of Route 61 contains two lanes for southbound traffic. Appellant drove in the left lane, while the dirt bike traveled in the right lane. Appellant observed the dirt bike did not have a license plate or any type of lights or safety signals. Appellant thought the dirt bike was an illegal street vehicle, so he pulled alongside and shouted to its driver, Isaac Morales ("Victim"), to "get off the road." (N.T. Trial Volume II, 12/13/18, at 470.)

Both vehicles stopped for a red light at the intersection of Route 61 and Hartman Road. At that point, Victim spat on the passenger side window of Appellant's truck and sped away. Appellant pursued Victim southbound on Route 61. Victim attempted to elude Appellant by crossing over the median strip and traveling the wrong way in the northbound lanes. Appellant continued the pursuit, however, positioning his vehicle over the median strip so that he was partially in the southbound and northbound lanes.

Appellant caught up to Victim and hit the dirt bike with his truck. The collision caused Victim to fall onto the road and sent the dirt bike careening into oncoming traffic. The dirt bike came to a stop after it crashed into the front bumper of a vehicle traveling northbound on Route 61, which was driven by Joyce Dibuono. Ms. Dibuono's passenger, her husband Benjamin, immediately called for an ambulance to assist Victim. Ms. Dibuono watched Appellant's truck come to a stop in the middle of Route 61, and she decided to exit her vehicle and speak with Appellant. When Ms. Dibuono asked

Appellant why he hit the dirt bike, he responded: "[B]ecause the kid…provoked him by spitting on his truck." (N.T. Trial Volume I, 12/11/18, at 174.)

On January 31, 2017, the Commonwealth filed a criminal information, charging Appellant with REAP, reckless driving, aggravated assault,[2] and aggravated assault by vehicle.[3] Appellant proceeded to a jury trial on December 10, 2018, and the Commonwealth called multiple witnesses who had observed Appellant's pursuit of Victim.

On the second day of trial, the Commonwealth presented testimony from Ms. Dibuono, followed by Mr. Dibuono. During Mr. Dibuono's direct examination, defense counsel requested a sidebar. Outside the presence of the jury, the parties informed the court that Appellant had not received handwritten statements that three of the witnesses, including the Dibuonos, had provided to the Muhlenberg Township Police Department.[4] The prosecutor informed the court that the investigating officer, Detective Francis Hill, had not given him the statements until earlier that day.

In light of this discovery violation, Appellant moved for dismissal of the charges due to prosecutorial misconduct. The court deferred ruling on the

---

[2] 18 Pa.C.S.A. § 2702(a)(1).

[3] 75 Pa.C.S.A. § 3732.1(a).

[4] The third statement was from another Commonwealth witness, Ralph Sterner, who testified on the first day of trial.

motion and adjourned for the day to provide the parties with an opportunity to review the handwritten statements. The court also noted that Appellant could prepare a memorandum of law in support of his motion.

The next day, Appellant submitted a memorandum of law. In addition to the Commonwealth's failure to provide the handwritten statements, Appellant claimed the Commonwealth had "lost" a videotaped statement that Appellant gave to the police on the day of the accident. (Memorandum, filed 12/12/18, at 2-3.)

With the benefit of Appellant's memorandum, the court conducted an *in camera* hearing and received testimony from Detective Hill. Detective Hill informed the court that his department had accidentally "overwritten" the videotape containing Appellant's statement. (N.T. Trial Volume I, 12/12/18, at 232.) Detective Hill also testified that he could not explain why the witnesses' handwritten statements were left in a trial binder and not included with the other discovery material. (*Id.* at 259.)

After receiving argument from counsel, the court denied Appellant's dismissal motion. The court acknowledged that the Commonwealth had committed a discovery violation pursuant to Pa.R.Crim.P. 573, but the court determined that the prosecutor had not committed "an intentional violation of the rules." (*Id.* at 289.) The court offered Appellant the option of requesting a mistrial, which Appellant declined. Consequently, the court provided Appellant with the ability to recall Mr. Sterner and the Dibuonos to raise any

issues related to their handwritten statements. The court also explained that it would give defense counsel "great latitude" with these witnesses to "get into subjects that were either previously addressed or that you now need to address based on the statements…." (*Id.* at 295.)

After the parties presented their remaining witnesses, the jury convicted Appellant of REAP and acquitted him of aggravated assault and aggravated assault by vehicle. Additionally, the court found Appellant guilty of the summary offense of reckless driving. On February 11, 2019, the court sentenced Appellant to eighteen (18) months' probation. Appellant timely filed a post-sentence motion on February 21, 2019, challenging the weight of the evidence supporting his convictions. By order entered May 28, 2019, the court denied Appellant's post-sentence motion.

Appellant timely filed a notice of appeal on June 17, 2019. On June 20, 2019, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on July 3, 2019.

Appellant now raises two issues for our review:

> WHETHER THE TRIAL COURT ERRED IN DENYING [APPELLANT'S] MOTION TO DISMISS THE CHARGES AGAINST HIM DUE TO PROSECUTORIAL MISCONDUCT.
>
> WHETHER THE GUILTY VERDICTS FOR [REAP] AND RECKLESS DRIVING WERE SUPPORTED BY THE WEIGHT OF THE EVIDENCE.

(Appellant's Brief at 9).

In his first issue, Appellant relies on **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for the proposition that a prosecutor's suppression of material evidence violates due process, regardless of whether the prosecutor acted in good faith. Appellant also argues that a prosecutor's duty to disclose material evidence extends to evidence in the possession of police agencies of the same government bringing prosecution. Based upon the foregoing, Appellant concludes the Commonwealth's discovery violations warranted dismissal of the charges, pursuant to Rule 573(E). We disagree.

Pennsylvania Rule of Criminal Procedure 573 governs a trial court's power to sanction a party for the failure to comply with mandatory discovery requirements:

### Rule 573. Pretrial Discovery and Inspection

\* \* \*

**(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(E). "This provision gives the trial court broad discretion in formulating remedies for a failure to comply with discovery requirements. Accordingly, our standard of review of a trial court's decision to sanction a party under [Rule 573(E)] is whether the trial court committed an abuse of discretion." **Commonwealth v. Galloway**, 771 A.2d 65, 68 (Pa.Super.

2001) (internal citations and quotation marks omitted).

Further, our Supreme Court has reiterated the general principles surrounding claims of **Brady** violations:

> Under **Brady** and subsequent decisional law, a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an impeachment nature. To establish a **Brady** violation, an appellant must prove three elements:
>
> > (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued.
>
> The burden rests with the appellant to prove, by reference to the record, that evidence was withheld or suppressed by the prosecution. The evidence at issue must have been material evidence that deprived the defendant of a fair trial. Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> **Brady** does not require the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments or defenses, nor does **Brady** require the prosecution to disclose every fruitless lead considered during a criminal investigation. The duty to disclose is limited to information in the possession of the government bringing the prosecution, and the duty does extend to exculpatory evidence in the files of police agencies of the government bringing the prosecution. **Brady** is not violated when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from other sources.
>
> **Brady** sets forth a limited duty, not a general rule of

discovery for criminal cases.

***Commonwealth v. Roney***, 622 Pa. 1, 22-23, 79 A.3d 595, 607-08 (2013),

*cert. denied*, 574 U.S. 829, 135 S.Ct. 56, 190 L.Ed.2d 56 (2014) (internal

citations and quotation marks omitted).

"[W]hile it is undoubtedly true that the trial court possesses some

discretion in fashioning an appropriate remedy for a ***Brady*** violation, that

discretion is not unfettered." ***Commonwealth v. Burke***, 566 Pa. 402, 415,

781 A.2d 1136, 1143 (2001). "It must be exercised in light of the competing

values weighed in the ***Brady*** analysis, and in light of the teachings in prior

cases involving similar concerns." ***Id.***

> Because of the compelling societal interest in prosecuting criminal defendants to conclusion, this Court has recognized that dismissal of charges is an extreme sanction that should be imposed sparingly and, relevant to the question here, only in cases of blatant prosecutorial misconduct.
>
> * * *
>
> Dismissal of criminal charges punishes not only the prosecutor…but also the public at large, since the public has a reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the full extent of the law. Thus, the sanction of dismissal of criminal charges should be utilized only in the most blatant cases. Given the public policy goal of protecting the public from criminal conduct, a trial court should consider dismissal of charges where the actions of the Commonwealth are egregious and where demonstrable prejudice will be suffered by the defendant if the charges are not dismissed.

***Id.*** at 416, 781 A.2d at 1144 (internal citations omitted).

Instantly, the trial court determined that the Commonwealth's actions did not warrant the dismissal of the charges against Appellant:

> The [three, written witness] statements were first provided to [Appellant] on the afternoon of the second day of trial, in the middle of cross-examination of one of the three witnesses and after the other two witnesses had already testified and were excused. The court dismissed the jury for the day to consider the implications of the late discovery.
>
> \* \* \*
>
> As set forth in the notes of testimony, the court was willing to declare a mistrial to allow for adequate review of the material and trial preparation, which [Appellant] declined. Moreover, the court afforded [Appellant's] counsel broad authority to examine the witnesses about the contents of their written statements (including permission to re-call excused witnesses), to question members of the police department about the failure to provide the statements in a timely manner, and to argue this issue during closing.
>
> However, as the court explained on the record—outside the presence of the jury—the Assistant District Attorney did not know about these written statements until the second day of trial, at which time he immediately notified [Appellant's] counsel and the court. Such conduct does not warrant dismissal.

(Trial Court Opinion, filed October 2, 2019, at 2) (internal citation omitted).

Here, the record supports the trial court's determination that the prosecutor did not know about the discovery violation until trial, and the prosecutor did not intentionally attempt to withhold the statements. Absent more, the trial court correctly concluded that Appellant was not entitled to dismissal of the charges. **See Burke, supra** at 419, 781 A.2d at 1146 (explaining "where there is no evidence of deliberate, bad faith overreaching

by the prosecutor intended to provoke the defendant into seeking a mistrial or to deprive the defendant of a fair trial, the proper remedy for the Commonwealth's failure to disclose exculpatory materials should be less severe than dismissal"). Thus, the trial court did not abuse its discretion in fashioning a remedy to the discovery violation under Rule 573(E), and Appellant is not entitled to relief on his first issue. **See Galloway, supra**.

In his second issue, Appellant argues he did not create a danger to other motorists; rather, Victim created the danger by riding a dirt bike that was not street legal. Appellant claims he followed Victim's dirt bike across the median to warn oncoming traffic about the biker, and any risks Appellant created were outweighed by the utility of his actions. Appellant insists Victim's unsafe driving created a critical situation, and it was Appellant's duty as a PennDOT employee to take actions to ensure the safety of the other motorists. Moreover, Appellant maintains he could not have reasonably foreseen that his attempt to maintain a safe roadway would result in an accident. Under these circumstances, Appellant concludes his convictions are against the weight of the evidence. Appellant's claim is waived.

A concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b), that is not specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal can result in waiver of the issue. **Commonwealth v. Reeves**, 907 A.2d 1, 2 (Pa.Super. 2006), *appeal denied*, 591 Pa. 712, 919 A.2d 956 (2007). "The court's review and

legal analysis can be fatally impaired when the court has to guess at the issues raised." ***Commonwealth v. Hansley***, 24 A.3d 410, 415 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011). "Thus, if a concise statement is too vague, the court may find waiver." ***Id.*** ***See also Commonwealth v. Freeman***, 128 A.3d 1231, 1248-49 (Pa.Super. 2015) (holding appellant waived his challenge to weight of evidence where his Rule 1925(b) statement failed to offer specific reasons why verdicts were against weight of evidence).

Instantly, Appellant's Rule 1925(b) statement presented his weight issue as follows: "The guilty verdicts for the aforementioned charges were contrary to the weight of the evidence presented at trial, in that the testimony against defendant was contradictory and not credible or reliable." (***See*** Rule 1925(b) Statement, filed 7/3/19, at 1.) Significantly, the Commonwealth presented nine witnesses over the course of two days. Appellant, however, failed to identify the specific testimony now at issue, and the trial court was left to guess what evidence Appellant sought to challenge on appeal. (***See*** Trial Court Opinion at 5.) We conclude Appellant's second issue is waived on this basis. ***See Freeman, supra***; ***Hansley, supra***. Accordingly, we affirm.

Judgment of sentence affirmed.

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/05/2020