J-S34008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
:
DUSTIN M. HARBAUGH :
:
Appellant : No. 1880 MDA 2024

Appeal from the Judgment of Sentence Entered November 12, 2024
In the Court of Common Pleas of Berks County
Criminal Division at No: CP-06-CR-0000696-2023

BEFORE: STABILE, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY STABILE, J.: **FILED: FEBRUARY 27, 2026**

Appellant, Dustin M. Harbaugh, appeals from the November 12, 2024, judgment of sentence imposing an aggregate 39 to 108 months for one count of involuntary manslaughter[1] and five counts of recklessly endangering another person.[2] We affirm.

The trial court set forth the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> On January 7, 2022, [Appellant], Jose Martinez (hereinafter referred to as "Martinez"), Chris Harbaugh (hereinafter referred to as "Chris"), Anthony Lauer (hereinafter referred to as "Lauer"), Lawrence Vanbrunt (hereinafter referred to as "Vanbrunt"), and Jason Blauch (hereinafter referred to as "Blauch") decided to go out to eat and then go to a couple of clubs. The plan was to have Martinez drive everyone as the designated driver in his van.

---

[1] 18 Pa.C.S.A. § 2504(a).

[2] 18 Pa.C.S.A. § 2705.

Martinez's van had been modified because he had been partially paralyzed from his chest down after having been shot. Due to the gunshot injury Martinez was able to obtain a medical marijuana prescription to help with the pain.

Martinez drove 2012 Chrysler Town & Country that was handicap accessible for him. He had a handle beside the steering wheel to control the gas and the brake and a ramp on the passenger side of the vehicle to allow him to get into and out of the car. Due to the ramp, the van did not have a middle row of seats, only the front two seats and a back row.

The group met at Martinez's house in Lebanon County, where they would typically play poker in his garage, and all got into Martinez's car so he could drive them around for the night as the designated driver. The first stop the group made was at a beer distributor in Lebanon. Martinez did not go into the distributor, but the rest of the group purchased cans of beer. After the beer distributor, the group went to a restaurant in Lancaster, about forty (40) minutes from the beer distributor. The group was drinking while at dinner, and after about an hour, they left and went to a gentleman's club in Reading, Pennsylvania. The group arrived at the second club, Buck Rubs, after 10 p.m. and stayed there until the club closed at 2 a.m. Buck Rubs was a bring your own beer club and the group continued to drink while at the club.

When the club closed at 2 a.m. on January 8, 2022, the group went back to Martinez's car to drive back to Lebanon. Martinez drove the van home, Chris sat in the passenger seat, Blauch was behind the driver's seat, sitting in a folding chair in the empty space where the second row is normally located, Lauer sat behind the passenger seat in Martinez's wheelchair, Harbaugh sat in the third-row seat behind the driver and Vanbrunt sat in the third-row seat behind the passenger.

The drive back to Lebanon from Buck Rubs typically took about forty-five (45) to fifty (50) minutes driving on Route 78. The weather this night was clear, there had been snow at some point prior to this but the roads at the time were clear, with the snow on the side of the highways. Martinez put the van on cruise control a little over the posted speed limit of sixty-five (65) miles per hour. There was little to no traffic during the drive back to Lebanon, so Martinez kept the van in the right lane.

At some point during the drive back to Lebanon, Martinez began to smell beer in the van, it smelled as if it had been poured out. After smelling the beer, Martinez heard Lauer say something along the lines of "why would you do that?" He also heard Blauch curse and complain about the beer being poured on him. After hearing Blauch, Martinez looked in the rearview mirror to see what was happening. When he looked, he didn't see any beer being poured, only his friends in their seats. At some point following the beer being spilled in the car, Martinez and [Appellant] began to argue. Martinez told [Appellant] that he is disrespectful when he drinks and told him that he was going to tell [Appellant's] wife how he treats his friends. [Appellant] did not say anything in response to Martinez, but within a couple of seconds [Appellant] had moved from the back of the van, where he was sitting, up to the front and was standing next to Martinez. No one reacted to [Appellant] moving to the front of the van, but once he was there, he grabbed the steering wheel and pulled it to the left using both hands.

After [Appellant] jerked the wheel, the van went off the highway to the left, hit the median, and then ricocheted off the wall and off the highway. The van came to a stop after hitting a tree and landing on the driver's side. After the van stopped, Martinez asked if everyone was alive; he heard a response from everyone in the vehicle except for Blauch.

After asking [Appellant] if he was okay, Martinez asked him, "why did you do that?" to which [Appellant] responded, "I didn't do nothing." Following the accident, EMT's and first responders arrived and helped them out of the crashed van.

Corporal Robert Markowski (hereinafter referred to as "Corporal Markowski") with the Pennsylvania State Police arrived at the scene of the accident after receiving a dispatch around 2:09 a.m. When he arrived on scene, none of the passengers had been removed from the van yet. Corporal Markowski identified each person as they were being removed from the van and into the ambulances. Corporal Markowski was able to identify each surviving passenger as they were removed from the van, but he was also able to identify Blauch, however, Blauch was not removed from the van because he was already dead when Corporal Markowski arrived on the scene. All the surviving passengers were transported to hospital after they had been

identified so that they could be treated for their injuries sustained in the crash.

Trial Court Opinion, 2/18/25, at 2-5 (record citations omitted).

On October 8, 2024, a jury found Appellant guilty of the aforementioned offenses. The jury found him not guilty of one count of homicide by vehicle and four counts of aggravated assault by vehicle. The trial court imposed sentence as set forth above, and Appellant filed a timely post-sentence motion challenging, among other things, the weight of the evidence in support of his convictions and the trial court's exercise of its sentencing discretion. The trial court denied relief and this timely appeal followed.

Appellant presents four questions:

1. Whether the trial court erred in denying [Appellant's] post-sentence motion requesting a new trial where his convictions for involuntary manslaughter and recklessly endangering another person were based on evidence insufficient to find him guilty of all charges?

2. Whether the trial court erred in denying [Appellant's] post-sentence motion requesting a new trial where his convictions for involuntary manslaughter and recklessly endangering another person were against the weight of the evidence?

3. Whether the trial court erred and abused its discretion in not merging the sentences for the lesser included offenses of recklessly endangering another person with the sentence for involuntary manslaughter?

4. Whether the trial court erred in imposing a sentence which was harsh and excessive and an abuse of discretion?

Appellant's Brief at 5.

We address these arguments in turn.

- 4 -

[O]ur standard of review [for a challenge to the sufficiency of the evidence] is *de novo*[,] and our scope of review is plenary. In reviewing a sufficiency challenge, we determine whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the factfinder.

***Commonwealth v. Wellmon***, 345 A.3d 370, 373 (Pa. Super. 2025) (internal citations and quotation marks omitted).

Per the Pennsylvania Crimes Code, "[a] person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." 18 Pa.C.S.A. § 2504(a). Likewise, a person commits the crime of recklessly endangering another person (REAP) "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705.

We observe that Appellant, in his Pa.R.A.P. 1925(b) statement, states only that the "[e]vidence was insufficient to find Appellant guilty of all charges." Appellant's Concise Statement of Matters Complained of on Appeal, 1/24/25, at ¶ 1.a. Appellant has waived his sufficiency of the evidence arguments because his Pa.R.A.P. 1925(b) statement fails to specify which elements of his convictions he is challenging. "In order to preserve a challenge

- 5 -

to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." ***Commonwealth v. Freeman***, 128 A.3d 1231, 1248 (Pa. Super. 2015). This is important because, "[w]hen an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. ***Id.***

Appellant's argument—that the guilty verdict was based on surmise and conjecture—also fails on the merits. In specific, Appellant claims that "[t]he only evidence presented by the Commonwealth to support their theory that [Appellant] was the cause of this accident was the testimony of Jose Martinez who had his own interest in shifting blame for the accident to someone else." Appellant's Brief at 15. Appellant notes Corporal Markowski's testimony that Martinez smelled of burnt marijuana and appeared to be intoxicated. Thus, Appellant's theory is that Martinez was driving under the influence of marijuana and concocted a story to shift blame to Appellant.

This argument is a challenge to Martinez's credibility. The factfinder was entitled to believe Martinez testimony that Appellant took control of the steering wheel and deliberately wrecked the van. A challenge to a witness's credibility is not proper in a sufficiency of the evidence argument. Rather, witness credibility goes to the weight of the evidence. ***Commonwealth v.***

*Gaskins*, 692 A.2d 224, 227 (Pa. Super. 1997). Appellant's sufficiency of the evidence argument fails because it is both waived and lacking in merit.

Next, Appellant challenges the weight of the evidence.

The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

To successfully challenge the weight of the evidence, a defendant must prove the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017) (internal citations and quotation marks omitted), *appeal denied*, 171 A.3d 1286 (Pa. 2017).

In substance, Appellant's argument is that the Commonwealth, in presenting its case, ignored that Martinez was driving under the influence of marijuana. Appellant's Brief at 21-22. Appellant claims this evidence was

"buried" in a police report. *Id.* Appellant does not raise a **Brady**[3] claim here, and it appears that this evidence was equally available to Appellant for use in his defense.

Appellant also argues, without elaboration, that the Commonwealth's reliance on a recording of an interview with victim Lauer, who did not testify at trial, was improper and done solely to inflame the jury. Appellant does not develop this point with citation to pertinent authority, as required by Pa.R.A.P. 2119(b), nor does he explain the substance of the recorded interview or how it unfairly prejudiced his defense.

As discussed above, the outcome of this trial rested on the jury's assessment of Martinez's credibility. The jury apparently believed Martinez's testimony that Appellant wrested control of the steering wheel and deliberately crashed the van. Appellant fails to explain how Martinez's impairment, even if established, would have absolved Appellant of criminal liability for his actions. Moreover, Appellant has not challenged the admissibility of the Lauer recording, nor does he explain why the trial court abused its discretion in not awarding a new trial in light of the prejudicial effect of the Lauer recording. Appellant has failed to develop any meritorious argument in support of his challenge to the weight of the evidence.

---

[3] **Brady v. Maryland**, 373 U.S. 83 (1963).

Next, Appellant argues that the sentences for REAP should have merged with the sentence for involuntary manslaughter. He is mistaken. The Pennsylvania Judicial Code provides:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense."

42 Pa.C.S.A. § 9765. The record reflects that the jury found Appellant guilty of one count of involuntary manslaughter for the death of Blauch and five counts of REAP, one for each victim, including Blauch. The trial court imposed sentence on the involuntary manslaughter count and four counts of REAP. The court did not impose sentence on the count of REAP pertaining to Blauch. Offenses against separate victims are separate criminal acts. *Commonwealth v. Glass*, 570 A.3d 720, 731 (Pa. Super. 2012), *appeal denied*, 63 A.3d 774 (Pa. 2013). In *Glass*, for example, the defendant committed a single act of arson that resulted in the reckless endangerment of several victims. The *Glass* Court explained that REAP is defined with respect to an individual person, and the defendant committed a separate REAP offense for each victim endangered by the fire. *Id.* Instantly, because the trial court imposed one sentence per victim—involuntary manslaughter for Blauch and REAP for the others—the sentences do not merge.

In his fourth and final argument, Appellant challenges the trial court's sentencing discretion. In order to preserve this issue for appeal, an appellant

must preserve it in a timely post-sentence motion, file a timely notice of appeal, present the issue in a concise statement of the reasons relied upon for allowance of appeal, per Pa.R.A.P. 2119(f), and explain in the 2119(f) statement why the argument presents a substantial question as to the propriety of the sentence. *Commonwealth v. Perzel*, 291 A.3d 38, 46 (Pa. Super. 2023), *appeal denied*, 301 A.3d 426 (Pa 2023). Appellant has met the first three of these procedural requirements. In his 2119(f) statement, he argues that a substantial question exists because the trial court abused its discretion in imposing consecutive sentences, resulting in a manifestly excessive aggregate sentence of 39 to 108 months.

"[I]n order to establish a substantial question, the appellant must show actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process." *Commonwealth v. Marts*, 889 A.2d 608, 612 (Pa. Super. 2005). This analysis is to be made on a case-by case basis. *Id.* A claim of an excessive sentence raises a substantial question when the appellant "sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Commonwealth v. Swope*, 123 A.3d 333, 338 (Pa. Super. 2015). Further, a challenge to the imposition of consecutive sentences presents a substantial question "in only the most extreme circumstances, such as where the

aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Id.* at 339. A bald claim of excessiveness due to the imposition of consecutive sentences will not raise a substantial question. *Id.*

Appellant's 2119(f) states only that the trial court "imposed a manifestly excessive sentence where guideline range sentences were imposed consecutively at each count of the criminal information[.]" Appellant's Brief at 13. Appellant's 2119(f) cites *Commonwealth v. Simpson*, 510 A.2d 760 (Pa. Super. 1986), for the proposition that consecutive sentences can raise a substantial question. In *Simpson*, the defendant's consecutive sentences comprised an aggregate 30 to 60 year sentence for robbery. *Id.* at 761-62. Here, however, Appellant received consecutive standard range sentences for the surviving victims of a car crash that he caused, with a minimum term of 39 months. Appellant's 2119(f) statement asserts nothing other than a bald claim of excessiveness. He does not identify a specific provision or underlying norm of the sentence code that his sentence violates, and he does not explain why his sentence presents an extreme circumstance that justifies appellate review of the trial court's imposition of consecutive sentences. For these reasons, we conclude that Appellant has not raised a substantial question. We therefore do not address his argument on the merits.

Because we have found each of Appellant's arguments lacking in merit, we affirm the judgment of sentence.

- 11 -

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 2/27/2026